THOMAS BERRY v. THE PENNSYLVANIA RAILROAD COMPANY.

1. A person about to cross a railroad track is charged with the duty of looking and listening for the approach of trains.
2. He is also charged with the duty of looking for a flagman and obeying the signals he gives, if given in time to avoid collision.
3. Where he knows that a flagman is habitually stationed at a crossing, and upon looking finds the flagman is not at his post, giving signal of danger, he has a right to presume that a train is not about to pass.
4. But absence, or negligence of a flagman, will not excuse the traveler about to cross the track from looking both ways and listening.
5. If, at the close of plaintiff's evidence, it clearly appears that he has failed in the duties above stated, or in either of them, and contributed in any degree to the accident, he should be nonsuited.
6. But if some negligence on part of the plaintiff does not clearly appear, the question should go to the jury.
7. In this cause it does not appear that there was any carelessness on part of plaintiff.

On error to the Supreme Court.

For the plaintiff in error, *R. V. Lindabury.*

For the defendants in error, *M. Beasley, Jr.*

The opinion of the court was delivered by

PARKER, J. At the trial of this cause the plaintiff was nonsuited, because at the close of his evidence the court was of opinion that contributory negligence had been proved.

The accident occurred in the forenoon of the 2d day of October, 1883, at a crossing in the city of Elizabeth. It was a rainy morning. The train which caused the injury complained of was running at a rapid rate of speed. There were numerous obstructions to the view near the track of defendant's railroad. The foliage on the trees was at the time very dense. The crossing was a dangerous one. A flagman had been stationed there by the defendants. The plaintiff had a right to cross the railroad at that place if, in so doing, he exercised care to avoid collision with trains of the company.

By law, the plaintiff was charged with the duty of looking and listening before he attempted to cross. He was also charged with the duty of observing and giving heed to signals of the flagman, if any were made in time to avoid accident. If he failed in these duties, or either of them, and by such failure contributed to the accident in any degree, he should have been nonsuited; for although contributory negligence is matter of defence, yet if it clearly appear at the close of the plaintiff's evidence, the court should nonsuit. Carelessness on the part of one crossing a railroad track may result not only in injury to himself, but may also be the means of maiming or killing many travelers, and therefore the courts must hold the law strictly against him who is proved to have been careless. Is there such proof in this case, is the question.

The plaintiff swears that before he attempted to cross the railroad he stopped his horse nine or ten feet from the track, looked both ways and listened, but neither saw nor heard a train approaching. He was seated in the front part of a wagon, with the front curtains up. He also says that when he looked he saw as far on the track as the obstructions to the view would permit, but did not see any train approaching, nor hear the sound of bell or whistle. There is no evidence to show that these statutory signals were given.

The plaintiff had frequently passed over that crossing and knew that a flagman was habitually stationed there. He had a right to presume that if a train was about to pass, the flagman would be at the crossing giving the customary signals of danger.

The plaintiff swears that before he attempted to go over the track he had full view of the crossing; that he looked to see if the flagman was there, and that no flagman was in sight; that not seeing a flagman he started to drive across the railroad; that when his horse had gotten on the first main track, he for the first time saw the flagman running towards him, with an umbrella raised in one hand and a flag, not unfurled, in the other; that the flagman did not wave the flag, but ran up to the horse and struck, or motioned to strike his head

with the umbrella or flag, which action he says stopped or checked the horse; that at this juncture he, for the first time, saw the locomotive of an approaching train within a few feet of him; and that he whipped the horse to get out of the way of the train, but was so delayed by the action of the flagman before stated, that he could not prevent the collision. The locomotive struck the hind wheel of the wagon, by means of which the plaintiff was thrown out and injured.

The plaintiff also swears that when he first saw the flagman he was in such a position as to make it impossible to turn or back the horse so as to escape.

The testimony of the other witnesses who were present at the time of the accident fully corroborates the statements of the plaintiff as to all material facts. James Styles says he saw the flagman running from near the flag-house, and at that time the horse and wagon were on the track. The flagman had something in his hand, not unfurled, with which he struck, or made a pass at the head of the horse, which checked him, and, as the flagman stopped the horse, the engine struck the hind part of the wagon. Alexander Dick, another witness, says that he saw the flagman in the act of approaching plaintiff with an umbrella raised in one hand, and a flag in the other, and at that time the feet of the horse were on the track; that the flagman made passes at the horse, which caused him to delay. This witness also says that he had a full view of the crossing, and did not see the flagman there until he saw him run at the horse when the horse was on the track. Joseph J. Ogden, another witness, also saw the accident, and he says that the plaintiff, before he undertook to cross the track, stopped and looked, and at that time there was no flagman visible at the crossing; that he saw the flagman run out when the plaintiff was just starting on the crossing; that then the horse was right over the rails, and part of the wagon on the track. This witness further says that the flagman stopped the horse so that he could not get over in time, and that the horse was on the first main track when the flagman started from the flag-house. John Irving swears that he saw the

plaintiff stop before driving on the track two or three yards back.   He says that at that time he had a view of the crossing, and the flagman was not there.   He says further that he saw plaintiff start to go across the track, and afterwards he saw the flagman start out of the flag-house towards the horse, with an umbrella in one hand and a flag in the other, and that the horse was then on the first main track, and the wagon on the switch track, and that when the flagman came up the horse came to a stand-still.

From the testimony it is clear that the flagman was not on the crossing giving the customary signal of danger when the plaintiff approached the line of the track; that the plaintiff, when within a few feet of the track, stopped and looked both ways and listened; that the flagman did not start from the flag-house until plaintiff's horse had gotten on the first track; that he did not then give the customary signal with the unfurled flag, and that the flagman who, without warning, allowed the plaintiff to drive on the track, so far as not to be able to turn or back with safety, then checked the horse to such extent as to prevent escape from the collision.

I am at a loss to see that the plaintiff, in attempting to cross the track, under such circumstances, was guilty of any negligence whatever.   It is true that negligence of a flagman will not excuse the traveler who attempts to cross the track of a railroad from looking both ways and listening.   He must not rely entirely on the flagman.   In this case it is proved that the plaintiff did look and listen.   He not only looked for the flagman at the crossing, but he stopped his horse and looked up and down the track before he undertook to drive over.

It may be said that plaintiff could have seen the train approaching before he drove on the track if he had looked, and if he did not see the train he is chargeable with not looking. The plaintiff swears that he did look, and did not see the train until it was almost upon him.  Is there evidence to show that the plaintiff's testimony in this respect is not true? It is shown that at considerable distance from the crossing, a person approaching the railroad where the plaintiff was driv-

ing, if he looks towards Newark, may see the track for several hundred feet. But at that point the train would not be near enough for plaintiff to see it, judging from the speed it was going. After passing that point of observation, the obstructions along the track prevent a view of the train until almost on the crossing. About nine or ten feet from the track there is a space among the branches of the trees about eighteen inches long, where a view of a part of the track can be had when the leaves are off, or partially off, the trees. The observations of all the witnesses (except the plaintiff) who testify on that subject were made when the trees were not clothed with dense foliage. No one swears that an approaching train could be seen through that opening on the 2d day of October, 1883. The plaintiff swears that on that day, before he drove on the track, he stopped and looked at that place and did not see the train. At that season of the year the foliage is luxuriant. It was raining, and the leaves and branches must have drooped somewhat. At all events, the only witness who speaks of obstructions to the vision at that point on that day swears he could not see the train. The conclusion from his evidence is that the opening, sometimes eighteen inches long, was, on the 2d of October, 1883, closed so as to obstruct the vision.

Upon the facts proved in this cause the case should not have been taken from the jury. The plaintiff took every precaution to prevent accident that a careful man would take when about to cross a railroad.

It certainly is not clear that the plaintiff was in the least degree careless, and where some contributory negligence does not clearly appear that question should go to the jury.

The judgment of nonsuit is reversed.

*For affirmance*—THE CHIEF JUSTICE, KNAPP, MAGIE, CLEMENT, PATERSON, WHITAKER—6.

*For reversal*—THE CHANCELLOR, PARKER, REED, SCUDDER, BROWN, COLE, McGREGOR—7.