BROMMER v. PENNSYLVANIA R. CO. PENNSYLVANIA R. CO. v. HENDERSON. SAME v. BLOCKSON.

(Circuit Court of Appeals, Third Circuit. June 10, 1910.)

Nos. 6, 5, 4.

1. RAILROADS (§ 328*)—ACCIDENTS AT CROSSINGS—CARE REQUIRED OF AUTOMOBILE DRIVER—DUTY TO STOP, LOOK, AND LISTEN.

The duty of an automobile driver approaching a grade railroad crossing, where there is restricted vision to stop, look, and listen, and to do so at a time and place where stopping and where looking and where listening will be effective, is a positive duty.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1057; Dec. Dig. § 328.*]

2. RAILROADS (§ 328*)—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLIGENCE—DRIVER OF AUTOMOBILE.

The driver of an automobile which was struck by a train at a grade crossing of railroad tracks was chargeable with contributory negligence which precludes his recovery from the railroad company for his injury, where, as he approached the crossing, his view of the tracks in the direction from which the train approached was obstructed by buildings and trees until he reached a point within 30 or 40 feet from the track, from which point he could have seen along the track for at least 500 feet, but he drove upon the crossing without stopping to look or listen.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1058; Dec. Dig. § 328.*]

3. RAILROADS (§ 327*)—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLIGENCE—PERSON RIDING IN AUTOMOBILE DRIVEN BY ANOTHER.

One riding in an automobile by invitation of the owner and driver, with whom he sat on the front seat, equally with such driver was required to exercise care for his own safety, and where without objection or protest he permitted the driver to negligently drive upon a railroad crossing immediately in front of an approaching train without stopping to look or listen, exercising no care on his own part to ascertain whether the crossing was safe, although the view of the track was obstructed until they reached a point only a few feet distant, he is chargeable with negligence contributing to his own injury by the striking of the car by the train and cannot recover therefor from the railroad company.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1055; Dec. Dig. § 327.*]

4. RAILROADS (§ 330*)—ACCIDENTS AT CROSSINGS—CARE REQUIRED OF PERSONS IN AUTOMOBILE.

The fact that there was a flagman at a grade crossing of a railroad, and that he gave no warning nor did any act of any kind to mislead those approaching the crossing in an automobile, did not relieve such persons of the duty to themselves exercise care before driving on the crossing by stopping to look and listen when they reached a point from which they could first see along the track.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1072; Dec. Dig. § 330.*]

5. RAILROADS (§ 327*)—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLIGENCE—OCCUPANT OF AUTOMOBILE.

A woman riding on the rear seat of an automobile, with two persons in the front seat and another in the seat beside her, at the time the car was struck by a train on a railroad crossing by which she was injured,

*held* not chargeable with contributory negligence as matter of law because she did not look nor listen for the train, in the absence of evidence that she could have seen, or that she knew, or could have known, that they were approaching the crossing.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1055; Dec. Dig. § 327.*]

In Error to the Circuit Court of the United States for the District of New Jersey.

Actions by Manuel Brommer, Charles D. Henderson, and Lillian Blockson, respectively, against the Pennsylvania Railroad Company. Judgment for defendant in the Brommer case affirmed on writ of error. Judgment for plaintiff in the Henderson Case reversed, and judgment for plaintiff in the Blockson Case affirmed on writs of error.

Wescott & Wescott, for plaintiffs.

J. H. Gaskill and T. L. Gaskill, for defendant.

Before BUFFINGTON and LANNING, Circuit Judges, and ARCHBALD, District Judge.

BUFFINGTON, Circuit Judge. This opinion deals with three cases tried together in the lower court and so argued in this. One Brommer was driving his automobile over the Westfield avenue grade crossing in Camden, N. J., of the Pennsylvania Railroad Company, when it collided with a train. In the automobile were Mr. and Mrs. Henderson and Mrs. Blockson, all of whom Brommer had invited to ride with him. Mrs. Henderson was killed and the other three occupants injured. These three brought suits. In the trial the court below held Brommer guilty of contributory negligence and directed a verdict against him. Verdicts and judgments were recovered by Henderson and Mrs. Blockson. To the entry of the judgment against him Brommer sued out a writ, and to the judgment entered against it in favor of Henderson and Mrs. Blockson the railroad sued out writs also.

We turn out attention first to the case of Brommer. A study of the entire testimony thereof and the fact that the tire marks on the ground, noted immediately after the accident, showed a deep swerve made by the automobile at the crossing, leaves us under the strong impression that Brommer attempted to make a flying dash over this crossing at a high rate of speed, and that this was the cause of the accident. We must, however, dispose of the case on the evidence given on the plaintiff's side, and on that alone we are clear the court below was right in holding Brommer guilty of contributory negligence. The crossing in question was a grade street one in the city of Camden, and Brommer had no previous knowledge of the approaches thereto. He came in sight of it when he passed over an elevation on Westfield avenue 170 feet back, and from there the avenue sloped to the crossing, to the sides thereof. The track, however, was shut out by hedges and house on either side of the avenue from his sight.

Henderson, a nephew of the plaintiff Henderson, who was called by plaintiff to prove the location, testified, in answer to the court's question:

"You could not see a train coming the way this train was coming until you got within 40 feet of the track."

McMullen, called by plaintiff for the same purpose, testified:

"As you approached the railroad track, how far down could you see on the left? A. I made no measurements. I should say that probably 30 feet from the railroad track you could see them for some distance; that is, down the track. Q. About what distance? A. Within about 30 feet of the railroad track, probably 500 or 600 feet, or maybe more. I don't know; I did not measure it."

And, as summed up by Brommer's counsel, "the evidence on both sides showed obstacles to vision up to within 30 or 40 feet of the track." Actual measurements and photographs testified to by defendant's witnesses show that at a point 30 feet back from the track there was a clear view to the left down the track for 1,400 feet. But taking the estimate made in plaintiff's proofs, there was a view point within 30 or 40 feet of the track for 500 or 600 feet.

Now, what was the duty of the driver of an automobile approaching a railroad crossing under such conditions? The question is, in a way, new, and we may therefore repeat in part what this court said in New York Central Co. v. Maidment, 168 Fed. 23, 93 C. C. A. 415 (21 L. R. A. [N. S.] 794):

"With the coming into use of the automobile, new questions as to reciprocal rights and duties of the public and that vehicle have and will continue to arise. At no place are those relations more important than at the grade crossings of railroads. The main consideration hitherto with reference to such crossings has been the danger to those crossing. A ponderous, swiftly moving locomotive, followed by a heavy train, is subject to slight danger by a crossing foot passenger, or a span of horses and a vehicle; but, when the passing vehicle is a ponderous steel structure, it threatens, not only the safety of its own occupants, but also those on the colliding train. And when to the perfect control of such a machine is added the factor of high speed, the temptation to dash over a track at terrific speed, makes the automobile unless carefully controlled, a new and grave element of crossing danger. On the other hand, when properly controlled, this powerful machine possesses capabilities contributing to safety. When a driver of horses attempts to make a crossing and is suddenly confronted by a train, difficulties face him to which the automobile is not subject. He cannot drive close to the track or stop there, without risk of his horses frightening, shying, or overturning his vehicle. He cannot well leave his horse standing, and if he goes forward to the track to get an unobstructed view and look for coming trains he might have to lead his horse or team with him. These precautions the automobile driver can take, carefully and deliberately, and without the nervousness communicated by a frightened horse. It will thus be seen an automobile driver has the opportunity, if the situation is one of uncertainty, to settle that uncertainty on the side of safety, with less inconvenience, no danger, and more surely than the driver of a horse. Such being the case, the law, both from the standpoint of his own safety and the menace his machine is to the safety of others, should, in meeting these new conditions, rigidly hold the automobile driver to such reasonable care and precaution as go to his own safety and that of the traveling public. If the law demands such care, and those crossing make such care, and not chance, their protection, the possibilities of automobile crossings accidents will be minimized."

Now, the plaintiff, by his own showing, had a vantage point 30 or 40 feet from the track where he could have stopped and seen a train at least 500 feet away. And it is equally clear that, if he had stopped and looked, this accident would not have happened. In the Maidment Case, supra, we said:

"The duty of an automobile driver approaching tracks, where there is restricted vision, to stop, look, and listen, and to do so at a time and place where stopping and where looking and where listening will be effective, is a positive duty."

This rule is conducive to 'safety, and observation and experience have deepened our conviction of its soundness. We therefore adhere to it and now restate it, and the court below was clearly right in holding it was conclusive of this case. Here, as there, the driver of the machine, when stopping, looking, and listening, would have prevented the accident, made chance, not stopping, the guaranty of his safety. It will not avail to say he looked and listened as he approached the crossing, and therefore there was no call to stop, for it is manifest either that he was going at such high rate of speed as to necessitate a deep swerve to avoid striking the flagman, or if he was approaching at the slow, two mile an hour rate, his witness says he was, he did not look, for if he had he would have seen this train 500 feet up the track, and with his machine under control, as the witness said it was, he would have stopped. "If a traveler," says Wharton's Law of Negligence, quoted with approval in Pennsylvania v. Righter, 42 N. J. Law, 186, "by looking along the road, could have seen an approaching train in time to escape, it will be inferred, in case of collision, that he did not look, or, looking, did not heed what he saw." To the same effect are authorities cited in Elliott on Railroads, § 1165. And the presumption of the law that he did not look when he came to this 30-foot vantage point is confirmed by the proof he produced. Helen Waters, who was about 100 feet from the crossing and saw the automobile coming, says that Brommer was about 15 feet from the track when he rose up on his seat and looked both ways. Mrs. Mowitz, another witness of plaintiff, was near the crossing and saw the automobile coming up to it. She shouted a warning just before it crossed. Her testimony, in explanation of why she did not do so sooner, clearly shows that she recognized the prudent and natural course was for Brommer to stop. Her testimony was:

"Q. Why was it, Mrs. Mowitz, that you did not holler when you saw the automobile going right up towards the track and saw the train coming along? A. Why, because I did not realize what was going to happen. Q. You thought the automobile was going to stop? Would you go across a railroad if you knew a train was coming? I thought it was— Q. (Repeated by stenographer) You thought the automobile was going to stop? A. I thought it would, naturally; there being a railroad there. * * * Q. They acted as if they did not see any railroad tracks, did they not? A. They did."

The plaintiff in error Brommer was clearly guilty of contributory negligence, and the court rightly gave binding instructions against him. His failure to stop, look, and listen, at a point where stopping and where looking and where listening would have prevented the accident, directly contributed thereto.

Brommer then being culpably negligent, was Henderson, who sat on the seat beside him, any less so? It is true there are cases, but this is not one of them, where a person hires a supposedly capable driver, and being regarded by the law as a passenger for hire, and as having no part in the management or control of the vehicle, is visited with no duty to help safeguard it. But this is a different case. Henderson was not a passenger, and Brommer was not a quasi carrier; but the whole party were united for a common purpose and had a common object in view. Brommer had no greater duty or obligation toward the others than they toward him. It is true he was running the machine; but if anything threatening the general safety of the party came within the knowledge of any of them, and he or she by timely warning was able to warn Brommer of such danger, and as a direct and proximate result of not doing so he or she suffered damage, how can it be said this was not negligence, and that thereby he or she did not contribute to causing the accident? The cases in each of the states in this circuit would hold such conduct negligent.

"The fact that the plaintiff was a guest did not relieve her from exercising ordinary care." Mittelsdorfer v. West Jersey Co. (N. J.) 73 Atl. 540.

"The testimony is wholly to the effect that the defendant (in the vehicle by invitation) committed himself voluntarily to the action of Fields (the owner and driver), that he joined him in testing the danger, and he is responsible for his own act. The case is ruled by Crescent v. Anderson, 114 Pa. 643 [8 Atl. 379, 60 Am. Rep. 367]." Dean v. Penna. Co., 129 Pa. 524, 18 Atl. 721 (6 L. R. A. 143, 15 Am. St. Rep. 733).

"It is no less the duty of the passenger, where he has the opportunity to do so, than of the driver, to learn of danger, and to avoid it if practicable." Farley v. Wilmington, 3 Pennewill, 584, 52 Atl. 543.

Now, as we have before noted in Brommer's case, the proof is that Brommer was approaching the crossing at a two-mile gait (slower than a slow walk); that he was slowing up; that the machine was under control; that there was a place 30 or 40 feet back from the track where it could be seen for 500 or 600 feet. It is therefore clear that Henderson could safely have called on Brommer to stop, and that if he chose to allow him to make a running crossing, without knowledge of what he might encounter, he in fact joined him in testing the danger. Such being the situation, was Henderson under any obligations in the premises? The court below thought not and, in effect, held that Henderson and the rest of the party with Brommer, being there "by invitation," cannot be charged with his negligent act; adding thereto:

"Hence, as I have said, in order to have the negligence of Mr. Brommer imputed to the plaintiffs, the plaintiffs must have in some measure actively participated by word or deed therein, so as in a sense to make his act their own; otherwise his negligence cannot be charged against or imputed to them."

But in our view the question before us is not whether Brommer's negligence is to be imputed to other occupants of the car, but whether they or any of them omitted that due care—and negligence is lack of due care—which under the circumstances they were bound to take. And to our view the court, in making the test of contributory negli-

.gence that "the plaintiffs must have in some measure actively participated by word or deed therein, so as in a sense to make his act their own," erred, for in Little v. Hackett, 116 U. S. 371, 6 Sup. Ct. 391, 29 L. Ed. 652, the Supreme Court held that acts of omission as well as commission might constitute contributory negligence, saying:

"That one cannot recover damages for an injury to the commission of which he has directly contributed is a rule of established law and a principle of common justice. And it matters not whether that contribution consists in his participation in the direct cause of the injury, or in his omission of duties which, if performed, would have prevented it. If his fault, whether omission or commission, has been the proximate cause of the injury, he is without remedy against one also in the wrong."

It follows, therefore, that Henderson was under obligations to take due care of his own safety. He was not a passenger for hire. He was engaged in the common purpose of a pleasure ride with the driver of the machine. He knew they were approaching a railroad crossing. Being free from the engrossing work of operating the machine, and occupying a seat beside the driver, he was in an even better situation than Brommer to look out for the safety of the machine. His own safety and the instinct of self-preservation should have led him to do so. Under the circumstances his duty was well stated in Davis v. Chicago Co., 159 Fed. 18, 88 C. C. A. 496, where it was said:

"Under the facts of this case, the relation that plaintiff sustained to his companion, Pfeutze, did not permit him to sit dumb and inert in the vehicle, taking no heed of a known danger, permitting Pfeutze to drive him into a pitfall or onto a deadly railroad track, implicitly trusting his life and limbs to the discretion of his companion without a word of warning or protest. It is now the better recognized rule of law that as to such a person situated as was the plaintiff, riding in a vehicle in mere companionship with his friend, engaged upon a mutual adventure, it is as much his duty as that of the driver to take observations of dangers, and to avoid them, if practicable, by suggestion and protest. In other words, he is required to exercise ordinary care to avoid injury."

Measured by this standard, and the rule is founded on sound reason and is conducive to safety, we see no escape from the conclusion that Henderson was equally culpable with Brommer. He knew they were approaching a railroad crossing. As he approached he saw the view was shut off from the track. Thus ignorant of the safety or danger of the crossing, prudence, self-preservation, and the positive demand of the law called on him to stop before attempting the passage. The machine was under control, by his own account, only moving at a two-mile rate. Under the circumstances he was called on to act, or, if he chose to keep silence and join in chancing the crossing, the law will not hold him faultless of his share of bringing about the accident. The power, speed, and control of automobiles are new factors in the crossing of railroads. They tempt a reckless driver to make flying crossings. On the other hand, they afford elements of safety and convenience to a careful one. The law contributes to the rational enjoyment of the automobile, to the safety of its occupants, and to the welfare of the railroad traveling public, when, in these early cases, it holds the automobile drivers rigidly to the rule laid down in the Maidment Case that:

"The duty of an automobile driver approaching. tracks where there is restricted vision to stop, look, and listen, and to do so at a time and place where stopping and where looking and where listening will be effective, is a positive duty."

And because Henderson joined with Brommer in a deliberate violation of this salutary rule, we must hold him guilty of contributory negligence. We have not overlooked the fact that there was a flagman at the crossing. But in any view of the case his presence does not change our conclusion as above. If the proofs of the defendant are true, the flagman saw in time both train and automobile approaching, and stood in the center of the crossing waving his flag; but in spite of this warning the driver came on and over the crossing at so high a rate of speed that his car made a deep swerve from its course to avoid striking him. On the other hand, if the evidence contra be accepted, the flagman, who was standing near the crossing with his flag rolled up and his back to the approaching automobile, in no way misled Henderson or relieved him of his duty of due care. Indeed, as we view the situation, the plain neglect of duty by the flagman did not relieve the persons attempting to cross from the duty on their part of looking and listening (Berry v. Penna. R. R., 48 N. J. Law 141, 4 Atl. 303), while his presence made it possible for them to call to him and ascertain that the crossing was safe.

It remains to notice the case of Mrs. Blockson. While holding her to a due measure of care, in so far as her situation and surroundings enabled her to exercise it, we have no proof she did not exercise it, or that anything she saw or failed to see contributed in any way to the accident. On that the trial judge, in refusing a new trial, well summed up the situation:

"As to Mrs. Blockson, she frankly admits that she did not look for the reason that she was sitting in the back seat of the automobile, and, as it appears, on the opposite side from that from which the train approached. The only implication, if any, that can be drawn from this testimony, is that because she was on the back seat she could not see. There is no evidence to show she knew that they were approaching a railroad crossing, or that from the position she occupied, sitting behind the men on the front seat, she could have known it by the exercise of ordinary care. The construction of the automobile does not appear. It was not shown whether the front seat was higher or lower than the rear seat, or whether the automobile had a top, or whether the top, if there was one, was up or down, or had side curtains or not, or, if it had, whether they were up or down."

To this we may add there was no proof as to whether the rear of the car was shut off from communication with the driver. Under this state of the proofs, we have no facts upon which we can say, as a matter of law, Mrs. Blockson was guilty of contributory negligence.

The judgment in her favor must therefore be affirmed.