# Gasser, Appellant, *v.* Philadelphia & Reading Railway Co.

*Negligence—Railroads—Grade crossing—Stop, look and listen—Contributory negligence—Nonsuit.*

1. One approaching a railroad is not only required to stop, look and listen, but to keep a due observation, from the stopping point on, till the crossing is made.

2. It is vain for any one to assert a driver looked and listened, if, in spite of what his eyes and ears must have told him, he drove directly in front of a moving locomotive.

3. When a driver stops at a place where he cannot get a good view of the railroad he is about to cross, from the vehicle in which he is riding, he must get out and walk to a spot where he can secure such view, and his failure to do so constitutes contributory negligence in law, for stopping where an approaching train cannot be seen is not an observance of the duty to stop, look and listen.

4. In an action against a railroad company to recover damages for personal injuries and for injuries to a one-horse buggy sustained by a collision with a train at a public highway grade crossing, a nonsuit is properly entered, where the evidence for plaintiff shows that in broad daylight he approached from the east the crossing where there were two tracks; that he was familiar with the crossing; that he stopped at a point about twenty feet from the first track where a box-car standing on a siding to the north

somewhat obscured his view in that direction; that a freight train was passing on the first or northbound track; that he stopped and waited until this train had gone by, and then started, and without doing anything else, drove on to the crossing; that his buggy was struck almost immediately on entering the second or southbound track by a locomotive hauling a train of 35 freight cars; that the train which caused the accident was running at the rate of 25 to 30 miles an hour, could have been heard 1,100 feet from the crossing, and seen, according to plaintiff's testimony 340 feet from where he stopped, and according to another witness 440 feet; that the noise of the train which had previously passed "was gone" before the accident happened; and that the usual stopping place was at a point 70 feet from the crossing, where one could see clearly for a distance of 340 feet to the north.

Argued February 16, 1920. Appeal, No. 134, Jan. T., 1920, by plaintiff, from order of C. P. Schuylkill Co., Sept. T., 1917, No. 149, refusing to take off nonsuit in case of George Gasser v. Philadelphia & Reading Railway Co. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING and KEPHART, JJ. Affirmed.

Trespass to recover damages for personal injuries and for injuries to a buggy. Before BECHTEL, P. J.

The court entered a compulsory nonsuit which it subsequently refused to take off. Plaintiff appealed.

*Error assigned* was refusal to take off nonsuit.

*J. O. Ulrich,* for appellant.—Whether plaintiff stopped a sufficient length of time to inform himself of conditions and whether he advanced with due caution from that point were questions for the jury: Tressler v. B. & O. R. R., 40 Pa. Superior Ct. 224; Bush v. P. & R. Ry., 232 Pa. 327.

If the train came in view after he was on the track he was not negligent: Kauffman v. Penna. R. R., 237 Pa. 227.

The credibility of oral testimony is for the jury: Reed v. Elder, 62 Pa. 308; Duffy v. York Haven W. & P. Co., 233 Pa. 107; Lotz v. B. & O. R. R., 247 Pa. 206,

The question as to whether the car obscured the tracks or coming train was for the jury: Rowe v. Western Maryland R. R., 224 Pa. 405.

The case at bar is similar to that of Waltosh v. Penna. R. R., 259 Pa. 372, and seems to control in this question.

*John F. Whalen*, with him *George Ellis*, for appellee. —Appellee submits the following cases showing the application of the rule of stop, look and listen: Kinter v. Penna. R. R., 204 Pa. 497; Mankewicz v. Lehigh Valley R. R., 214 Pa. 386; Walsh v. Penna. R. R., 222 Pa. 162; Paul v. Phila. & Reading Ry., 231 Pa. 338; Craig v. Penna. R. R., 243 Pa. 455; Follmer v. Penna. R. R., 246 Pa. 367; Kipp v. Cent. R. R. of N. J., 265 Pa. 20.

OPINION BY MR. JUSTICE MOSCHZISKER, March 1, 1920:

George Gasser sued in trespass to recover damages for injuries to his person and property; he appeals from the refusal to take off a nonsuit.

June 2, 1917, about six o'clock in the morning, when broad daylight, plaintiff was driving a one-horse buggy in a westerly direction on a public road that crossed, at grade, defendant's right-of-way, consisting of two tracks; on reaching this crossing, with which he was familiar, Gasser found a box car standing on a siding to the north, somewhat obscuring his view in that direction, and a freight train was passing on the first, or northbound, track; he stopped and waited until this train had gone by, and then started over the railroad; his buggy was struck almost immediately on entering the second, or southbound, track by a locomotive hauling a train of 35 freight cars; the horse was not hurt, but the buggy was damaged and plaintiff injured.

The only stop Gasser made before attempting the crossing was at a point about 20 feet from the first track, where, as previously said, his view north was to a degree obstructed; although, as stated by one of his witnesses, the usual stop, for those approaching in the di-

rection plaintiff pursued, was at a point about 70 feet from the crossing, where one could see clearly for a distance of 340 feet to the north, the view being more or less interfered with at that point by the arch of a bridge across the railroad.

Plaintiff testified: "I stopped there [20 feet from the track] because the train was going by [meaning the first, or northbound, train], I waited till they were by, and then I drove up on the northbound track and looked up [north] and saw nothing coming, so I drove over......I looked up and I looked down and I saw nothing; the first thing I knew I was lying in the ditch." He said that, from the place he made his observation, he could see as far as the arch (340 feet) and the engine which hit him came through this obstruction of the view; that, notwithstanding he was endeavoring to protect himself against danger from a train approaching on the southbound track, he not only failed to see the heavy train of 35 freight cars which struck him almost immediately upon his entry thereon, but "heard nothing" till he "picked [himself] up and saw the cars going by." His chief witness testified that at the point where plaintiff stated he made his observation to the north, just before entering the southbound track, one can see to the arch and 100 feet beyond.

On cross-examination, Gasser was asked this question: "Then after this train went by, you drove right along without getting out of your buggy, without doing anything except driving your horse right across the railroad tracks; is that right?" to which he replied, "Yes, that is right." This reply probably states the real cause of the accident; for plaintiff's evidence that he looked, in the direction from which the second train subsequently came, either is obviously wrong, or, if true, convicts him of negligence in not seeing that which must have been clearly within his view.

The train which did the damage was moving at a speed of from 25 to 30 miles an hour, as stated by the

sole witness on that point, and, according to plaintiff's own testimony, the noise of the train which had previously passed "was gone" before the happening of the accident. In other words, Gasser does not attempt to say that the noise of the first train prevented him from hearing the second, nor that he was confused or hurried in any manner in making the crossing, but rather relies entirely upon his statement that he looked and listened just before entering the southbound track and neither saw nor heard the approaching train.

In Provost v. Director General of Railroads, 265 Pa. 589, we said recently: "One approaching a railroad is not only required to stop, look and listen, but to keep a due observation, from the stopping point on, till the crossing is made. Gilsan [plaintiff's driver], having two tracks to cross, was obliged to look not only to the north, but also to the south, and, as stated by the trial judge, he could not make both observations at one time, but the head can be turned in the fraction of a second, and, as before stated, it is true beyond doubt that the merest glance, with attention, toward the north, would have shown Gilsan the approach of the train which subsequently struck his motor"; and this is appropriate here. Again, in Smith v. Director General of Railroads, 266 Pa. 328, we more recently said: "It is vain for anyone to assert a driver looked and listened, if, in spite of what his eyes and ears must have told him, he drove directly in front of a moving locomotive," citing authorities. Finally, what we said in Siever v. Pittsburgh, C., C. & St. L. Ry. Co., 252 Pa. 1, 8, is also applicable here: "When a driver stops at a place where he cannot get a good view of the railroad, he is about to cross, from the vehicle in which he is riding, he must get out and walk to a spot where he can secure such a view, and his failure so to do constitutes contributory negligence in law, for stopping where an approaching train cannot be seen is not an observance of the duty to stop, look and listen; but when he comes to a standstill at a usual stopping

place, where he can get some view of the tracks [which the present plaintiff did not do], whether he should go forward to a better place to look, is a question for the jury to determine."

As stated by the trial judge, in directing the nonsuit, "the conclusion is irresistible that, if plaintiff had looked, or if he had listened, he could have told the train was coming......His own witness......said he heard this train '1100 feet away, heard it coming.' It is a pure case of a person saying, 'I looked and listened and saw nothing and heard nothing,' and yet getting [almost immediately] hit by a railroad train of 35 cars."

We are not convinced of error; hence the assignments are overruled and the judgment is affirmed.