## PHILADELPHIA & R. RY. CO. et al. v. LE BARR.

(Circuit Court of Appeals, Third Circuit. April 19, 1920.)

No. 2515.

1. **Railroads ☜327(12)—Persons riding together on highway equally chargeable with negligence at crossing.**

   Where two persons are traveling together on a matter of mutual concern in an automobile owned and driven by one of them, the other is equally charged with the duty of care for their safety, and any negligence in driving into danger at a railroad crossing without protest on his part is attributable to him.

2. **Railroads ☜328(4)—Automobile driver's duty to stop, look, and listen defined.**

   It is the positive duty of an automobile driver, approaching a railroad crossing where there is a restricted vision, to stop, look, and listen at a time and place where stopping, looking, and listening would be effective, and failure to observe this rule is negligence.

3. **Railroads ☜331(3)—Duty of traveler, signaled by crossing watchman, defined.**

   While the signal of a crossing watchman to a traveler on the highway to cross does not make the railroad company an insurer of his safety, nor absolve him from the duty of exercising due care, it is a representation that there is no train within striking distance, and the traveler will not be held to the strict rule of constant and extreme vigilance which is enforced against one who crosses in sole reliance on his own judgment.

4. **Railroads ☜350(29)—Negligence of automobile driver, signaled by watchman, question for jury.**

   Where the driver of an automobile, on approaching a railroad crossing with which he was unacquainted at night, where at some points near the crossing the view of the tracks was obstructed, stopped 20 or 30 feet from the tracks and looked and listened, without seeing or hearing any train, whether he was chargeable with negligence in proceeding to cross on signal of the watchman without again stopping *held* a question for the jury.

In Error to the District Court of the United States for the Middle District of Pennsylvania; Charles B. Witmer, Judge.

Action by Victor E. Le Barr against the Philadelphia & Reading Railway Company and William G. McAdoo, Director General of Railroads. Judgment for plaintiff, and defendants bring error. Affirmed.

John T. Brady, of Harrisburg, Pa., for plaintiffs in error.

Paul A. Kunkel, of Harrisburg, Pa., for defendant in error.

Before BUFFINGTON, WOOLLEY, and HAIGHT, Circuit Judges.

WOOLLEY, Circuit Judge. Blanche Le Barr was killed in a collision at a grade crossing on the defendant's railroad. Victor E. Le Barr, her husband, brought this action to recover damages for her death, charging, as the defendant's negligence, first, its failure to give warning by bell or whistle of the approaching train, and second, the act of its crossing flagman in signalling the driver of the vehicle in which his wife was riding to pass over the tracks in front of the train. The verdict was for the plaintiff. By this writ the defendant brings

here for review several rulings of the trial court, all of which are embraced in its refusal to grant the defendant's motion for a directed verdict.

The facts of the plaintiff's case, stated briefly, are these: Le Barr and his wife were traveling in an automobile owned and driven by. Charles Brensinger. Le Barr was sitting with Brensinger on the front seat; Mrs. Le Barr was sitting on the rear seat. The car was open except for side curtains in the rear.

The tracks of the railroad were three in number, comprising, as approached in this case, first, a westbound track; next, a central high speed eastbound track; and last, a low speed eastbound track. The highway crossed the tracks at an angle of approximately 45 degrees.

It was dark when the automobile party drew near the railroad. The crossing and its surroundings were wholly unfamiliar to them. On reaching a point about twenty to thirty feet from the first track Brensinger stopped the car, and observing a flagman on duty, signalled him by a blast of the horn. While awaiting a reply, Le Barr looked up and down the tracks and saw nothing; he listened and heard nothing. Brensinger with his eyes on the flagman also listened and heard nothing. As the flagman made no response to his first signal, Brensinger sounded the horn a second time by three or four blasts. Then the flagman turned and gave a signal to pass over. In response to this signal Brensinger drove the car towards the railroad at low speed. When the front wheels reached the first track, Le Barr for the first time saw a train, but he could not tell which track it was on. Brensinger did not stop the car on the tracks, nor did Le Barr ask him to do so, but continued across, with the result that the car just missed being struck by a fast freight east bound on the central track and was lightly struck by a slow freight east bound on the third track, deflecting the car from the road toward a ditch. Mrs. Le Barr was found under the car dead.

The defense was, in substance, that the flagman did not signal the party to cross; that warning of the approaching train was given by bell and whistle, and that if the plaintiff had listened he would have heard; that, viewed at various points within a hundred feet of the railroad right of way, the tracks were visible for distances ranging from five hundred and eighty feet to half a mile; that if the plaintiff had looked when the car stopped he would have seen the oncoming train; or, if, at that point his vision was obstructed, he should have stopped again at some point nearer the tracks, where, upon looking and listening, he could have seen and heard the train; and that the plaintiff's failure so to do constituted contributory negligence which the court should have found as a matter of law.

[1] In reviewing this case, it is pertinent to note that Le Barr was not the guest of Brensinger. The two were traveling together on a mission of mutual concern. Though not driving the car, it is evident that Le Barr was required equally with the driver (his opportunities being equal) to exercise care for his own safety. Farley v. Wilmington, 3 Pennewill (Del.) 584, 52 Atl. 543. If without protest he permitted himself to be negligently driven into danger, any negligence

that contributed to the injury is imputable to him. Mittelsdorfer v. West Jersey Co., 77 N. J. Law, 702, 73 Atl. 540. Having made no protest against Brensinger encountering dangers equally open to him, Le Barr is chargeable with any negligence of which Brensinger was guilty. Brommer v. Pennsylvania R. R. Co., 179 Fed. 577, 581, 103 C. C. A. 135, 29 L. R. A. (N. S.) 924. Therefore, we shall from now on regard Le Barr as though he had driven the car.

As the jury have found for the plaintiff on all controverted issues of fact, we shall, of course, review the case as established by the verdict. Of these issues the one brought here for review on the defendant's claim that it was an issue of law, and was, therefore, erroneously submitted to the jury, is that of the plaintiff's contributory negligence. This issue was based on facts proved by the defendant and not rebutted by the plaintiff, and concerned the failure of the plaintiff to see and hear the approaching train when he stopped, or his failure to stop again and to see and hear the train, which, it was insistently claimed, was, most of the time, within his sight and hearing. In the defendant's claim of an extended view of the tracks there is the implication of a restricted view at different points, thus presenting a question with reference to which we regard the law as settled.

[2] This court and the courts of Pennsylvania have repeatedly pronounced it to be a positive duty of an automobile driver approaching railroad tracks where there is a restricted vision to stop, look, and listen at a time and place where stopping, looking and listening would be effective. Broadly speaking, failure to observe this rule is negligence. N. Y. C. & H. R. R. Co. v. Maidment, 168 Fed. (C. C. A. 3rd.) 21, 25, 93 C. C. A. 413, 21 L. R. A. (N. S.) 794; Brommer v. Pennsylvania R. R. Co., 179 Fed. (C. C. A. 3rd.) 577, 103 C. C. A. 135, 29 L. R. A. (N. S.) 924; D. L. & W. R. R. Co. v. Welshman, 229 Fed. (C. C. A. 3rd.) 82, 143 C. C. A. 358, L. R. A. 1916E, 816; Von Bergen v. Erie R. R. Co., 70 Pa. Super. Ct. 46; Hanigan v. P. & R. Ry. Co., 257 Pa. 237, 101 Atl. 640; Walsh v. Pennsylvania R. R. Co., 222 Pa. 162, 70 Atl. 1088.

In imposing this rule of duty upon the plaintiff in this case, we must inquire what were his surroundings and what he did with reference to them. He was bound to guard himself from danger in both directions. The defendant showed by its own testimony that there was from this crossing a peculiar combination of extended and restricted views of the railroad tracks. While at certain points within one hundred feet of the tracks the view up the tracks was, undoubtedly, open and extended, there were, nevertheless, obstacles to the vision of one stopping at other points within this distance. These comprised a watchman's box, an outhouse, a cluster of telegraph poles, and a gradually rising embankment with a water tank on top, none readily discernible in the dark. To one stopping between these obstacles, the view of the tracks varied in extent; but to one stopping behind them, the view was obstructed; in some instances, partially; in others, wholly. So also, to one moving toward the tracks from a point twenty or thirty feet distant, the view up the tracks closed and opened intermittently as these obstacles were encountered and passed. While

there was nothing to obstruct the view down the tracks, the diagonal crossing compelled the plaintiff on looking in that direction while moving in the opposite direction to reverse his position and look back over his shoulder.

It cannot be disputed that the plaintiff obeyed the primary require-ment of the rule by stopping, looking and listening at some place. The jury have found that on stopping he did not see or hear the train. Whether this was due to the accident of stopping behind one of the several obstacles does not appear, but having once stopped, looked and listened and having moved on only upon the flagman's signal that he might cross in safety, the question is, whether the rule imposed upon the plaintiff the imperative duty again to stop, look and listen without reliance in any measure on the flagman's signal, and whether, accord-ingly, his failure so to do amounts as a matter of law to contributory negligence.

[3] When at a grade crossing, gates are raised or a flagman beck-ons a waiting traveler to come on, there is a representation that there is no approaching train within striking distance. It is in effect an in-vitation to cross; but one, however, by which the railroad company does not become the guardian of the traveler or an insurer of his safe-ty. It is an invitation only to cross with due care, requiring on the part of the one accepting it the exercise of his sight, hearing, and such other factors of safety, as the situation and circumstances permit. While the law will not under all circumstances allow a person about to cross the tracks of a railroad to rely for his safety entirely upon the signal of gates or flagmen, neither will the law ignore the whole effect of such invitation. Therefore, the traveler when responding to the invi-tation will not be held to the strict rule of instant and constant and ex-treme vigilance which is enforced against one who crosses in sole re-liance on his own judgment. Erie R. R. Co. v. Schultz, 183 Fed. (C. C. A. 6th.) 673, 675, 106 C. C. A. 23; D. L. & W. R. R. Co. v. Welsh-man, 229 Fed. (C. C. A. 3rd.) 82, 85, 143 C. C. A. 358, L. R. A. 1916E, 816.

[4] Whether the plaintiff in this case when approaching the rail-road tracks in response to the flagman's invitation exercised the meas-ure of care which the law imposed upon him; whether, after stopping once, he should have stopped again and by so doing he could for some reason have seen and heard what he had failed to see and hear before; or whether, having stopped so close to the tracks the first time, an-other stop would, in view of existing obstacles, have been no more ef-fective; and whether, having once started to cross upon the flagman's signal, he thereafter relied solely upon its implied representation of safety, or on the contrary, he did all that the situation required of him, not ignoring as a factor the invitation implied by the signal, were mat-ters of fact to be determined only by a jury. We are of opinion, therefore, that the trial court committed no error in refusing to de-cide them as matters of law.

As a precaution against misunderstanding, we distinguish not the law, but the facts in this case from those in N. Y. C. & H. R. R. Co. v. Maidment, 168 Fed. 21, 93 C. C. A. 413, 21 L. R. A. (N. S.) 794

and Brommer v. Pennsylvania R. R. Co., 179 Fed. 577, 103 C. C. A. 135, 29 L. R. A. (N. S.) 924. The plaintiff in this case stopped, not to await the passage of a train, but, admittedly, to protect himself by looking and listening and by awaiting the assurance of the flagman that he could cross in safety. In the cited cases, the drivers of the automobiles took no precautions, but, on the contrary, took chances which directly brought about the accidents.

The judgment below is affirmed.