## DELAWARE & HUDSON CO. v. BOYDEN et ux.

### (Circuit Court of Appeals, Third Circuit. January 31, 1921.)

### No. 2593.

**1. Negligence ⬄93(2)—Of husband or wife chargeable to the other.**

Where a husband and wife, riding in a vehicle driven by the husband, were engaged in a joint enterprise, the negligence of either was chargeable to the other under the law of Pennsylvania.

**2. Railroads ⬄327(8)—Traveler must continue to look and listen.**

Under the law of Pennsylvania, one crossing a railroad track must continue to look and listen after he is committed to the crossing.

**3. Railroads ⬄350(16)—Construction of testimony as to "looking" held for jury.**

Where plaintiff testified that, when his wife screamed while they were crossing a railroad track, he looked to the north and then to the south, his testimony on cross-examination that he "wasn't really looking for a train" was not conclusive that he did not look while crossing, as its meaning was doubtful, and the jury was justified in concluding that he meant he was not really expecting a train.

**4. Railroads ⬄350(13)—Contributory negligence question for jury.**

Where there is any evidence on the subject from which the fact of due care during the crossing may be found, the question whether plaintiffs exercised due care while crossing a railroad is for the jury.

**5. Railroads ⬄350(23)—Evidence held to make question for jury as to view obtained by alighting.**

In an action for injuries sustained at a railroad crossing, where plaintiffs, when they stopped before crossing, had a view of the track for 140 to 208 feet, evidence *held* to make a question for the jury whether there was a clear prospect from any point to which one of them might have walked by alighting and going ahead of the vehicle.

**6. Railroads ⬄327(8)—Traveler must stop, look, and listen at place where such acts are effective.**

Under the law of Pennsylvania, it is the duty of parties crossing a railroad track to stop, look, and listen at a place where stopping, looking, and listening would be effective.

**7. Railroads ⬄350(23)—Contributory negligence, in failing to alight and go ahead to look, held question for jury.**

Where plaintiffs stopped before crossing a railroad track at a point where they could see the track for 140 to 208 feet, and there was evidence that there was no other available stopping place before crossing, and that the best view was there obtainable without alighting, and it was not shown without contradiction that there was a clear prospect from any point to which one of them might have walked by alighting and going ahead of the vehicle, the court properly refused to rule as a matter of law that one of them should have gone forward.

In Error to the District Court of the United States for the Middle District of Pennsylvania; Charles B. Witmer, Judge.

Action by George Boyden and wife against the Delaware & Hudson Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

Paul Bedford and Frank A. McGuigan, both of Wilkes-Barre, Pa. (Lewis E. Carr, of Albany, N. Y., James H. Torrey, of Scranton, Pa. and Walter C. Noyes, of New York City, of counsel), for plaintiff in error.

R. L. Levy and Leon M. Levy, both of Scranton, Pa., and Allan D. Miller, of Susquehanna, Pa., for defendants in error.

Before WOOLLEY and DAVIS, Circuit Judges, and THOMPSON, District Judge.

THOMPSON, District Judge. George Boyden and Annie Boyden, his wife, brought suit against the Delaware & Hudson Company to recover damages alleged to have been suffered by the plaintiffs on July 31, 1916, through a collision between a vehicle in which they were crossing the defendant's tracks and a locomotive and train of the defendant railroad company. The plaintiffs alleged negligence in running the train at excessive speed and without warning of its approach by bell or whistle.

The plaintiffs, on the day in question, had left their home for the purpose of fishing, and were riding in a surrey drawn by a pair of horses. Mr. Boyden was seated in front driving, and Mrs. Boyden was seated in the rear. The highway upon which they approached, from the north, the grade crossing where the accident occurred, runs parallel with the double railroad tracks of the defendant to the place of crossing, where it turns at a right angle to the left. At this place the right of way and tracks curve to the right of one approaching from the north; the curve continuing to a point about 600 feet south of the crossing. The curve extends around an embankment covered with trees and bushes, which obstruct a view of the tracks by one traveling south upon the highway. The plaintiffs were thoroughly familiar with the crossing, having crossed frequently for many years. When they reached the turn of the road at the crossing, Mr. Boyden stopped the horses with their heads 5 or 10 feet from the tracks, which placed him, seated in the surrey, a distance from the first track of from 15 to 25 feet. At 15 feet from the tracks a view to the south of 208 feet could be had; at 25 feet, a view of 140 feet. Having stopped, and neither seeing nor hearing any train, the plaintiffs proceeded, with the horses on a walk, to cross the tracks. After they started to cross, Mrs. Boyden screamed, whereupon Mr. Boyden looked to the north and saw nothing, and, looking to the south, he saw a locomotive and train approaching. He slapped the horses with the reins. They broke into a gallop, and cleared the track; but, according to the plaintiffs' testimony, the locomotive struck the rear end of the surrey. The plaintiffs were thrown out and Mrs. Boyden sustained severe injuries.

The jury returned a verdict for both plaintiffs, thus finding against the defendant upon the questions of collision, of its negligence in running the train at an excessive rate of speed, of its failure to give warning of the train's approach by bell or whistle, and the plaintiffs' contributory negligence, all of which questions were in issue under the evidence. The defendant assigns error to the refusal of the court to give binding instructions as to both plaintiffs (1) because Mr. Boyden, who was driving, failed to look or listen while crossing the tracks; (2) because neither plaintiff alighted and went forward to a point where a better view of the tracks could be obtained, and, in either

case, the plaintiffs being upon a joint enterprise, the negligence of one is also chargeable to the other.

[1] There can be no controversy about the latter proposition (Brommer v. Penna. R. R., 179 Fed. 577, 103 C. C. A. 135, 29 L. R. A. [N. S.] 924; Phila. & Reading R. R. v. Le Barr [C. C. A.] 265 Fed. 129), and the defendants' request to that effect was affirmed by the trial judge. We will first dispose of the question whether the evidence so clearly showed contributory negligence in failing to look and listen while crossing the track that the case should have been taken from the jury.

The evidence showed that Mr. Boyden heard his wife scream and looked to the north, and then looked to the south and saw the approaching train. As was said in a recent case, he could not look in both directions at once, but he could turn his head in the fraction of a second. The fact is in evidence that he did look in both directions, as it was his duty to do.

[2] What the law requires is that one must exercise his senses to discover danger. He must continue to look and listen after he is committed to the crossing. Kipp v. Central R. R. of N. J., 265 Pa. 20, 108 Atl. 175; Gasser v. Philadelphia & Reading R. R., 266 Pa. 493, 109 Atl. 760.

[3] In insisting that Mr. Boyden failed in this duty, the defendant lays stress upon his testimony wherein, on cross-examination in relation to what he did when his wife screamed and he looked to the north, he testified:

"Q. But you couldn't see anything of the train in that direction? A. *I wasn't really looking for a train.*"

It is urged that this answer foreclosed the plaintiffs' case, by conclusively showing that Mr. Boyden did not look to see whether a train was approaching. But this is a familiar commonplace expression, frequently used to mean, and the jury would have been justified in accepting it as meaning: "I wasn't really *expecting* a train." If he had been *looking* for a train, in the sense of expecting one at that time, he would have been guilty of negligence in attempting to cross, and we do not feel justified in construing the language against him in the sense contended for. Its meaning is at the most doubtful, and its construction was for the jury.

[4] Assuming for the present that the stop of the plaintiffs before crossing was such as to justify them in proceeding, it is well settled that, where any evidence on the subject is present from which the fact of due care during the crossing may be found, the question is for the jury. Witmer v. Bessemer, L. E. & W. R. R., 241 Pa. 112, 88 Atl. 314; Moore v. Penna. R. R., 242 Pa. 541, 89 Atl. 671.

In considering the next question, whether one of the plaintiffs should have descended from the vehicle and gone ahead of the team, we quote from the opinion of the Supreme Court of Pennsylvania in the case of Siever v. Pittsburgh, C., C. & St. L. Ry. Co., 252 Pa. at page 7, 97 Atl. at page 118, where the subject is thoroughly discussed and the effect of the cases summarized as follows:

"In Kinter v. Penna. R. R. Co., 204 Pa. 497, relied upon by appellant, we ruled, following the logic of Penna. R. R. Co. v. Beale, 73 Pa. 504, that when a driver stops at a point where an obstruction prevents a proper view of the railroad he is about to cross, he must descend from his vehicle and, if necessary, walk to a point where the prospect is clear. See also Mankewicz v. Lehigh Valley Co., 214 Pa. 386; Bistider v. Lehigh Valley R. R. Co., 224 Pa. 615; Craig v. Penna. R. R. Co., 243 Pa. 455; Follmer v. Penna. R. R. Co., 246 Pa. 367. While we have not departed from the rule just stated, yet in Messinger v. Penna. R. R. Co., 215 Pa. 497, where the plaintiff stopped at a point from which, at the time, he had a view of only about 80 feet in the direction of the approaching train, we held that, since he had stopped at the customary place, it was for the jurors, and not for the court, to say whether he had exercised due care (see also Hanna v. Philadelphia & Reading Ry. Co., 213 Pa. 157); and in Calhoun v. Penna. R. R. Co., 223 Pa. 298, 300, we said: 'Where a driver has stopped at the usual place for stopping, from which he has a view of the tracks, whether he should go forward in advance of his team to a better place to look is a question to be determined by the circumstances of the particular case.' In short, when all the cases on the subject are read together, it appears that the rule may now be stated thus: When a driver stops at a place where he cannot get a good view of the railroad he is about to cross from the vehicle in which he is riding, he must get out and walk to a spot where he can secure such a view, and his failure so to do constitutes contributory negligence in law, for stopping 'where an approaching train cannot be seen  *  *  *  is not an observance. of the duty to stop, look, and listen' (Mankewicz v. Lehigh Valley R. R. Co., supra); but when he comes to a standstill at a usual stopping place, where he can get some view of the tracks, whether he should go forward to a 'better place to look' is a question for the jury to determine."

[5, 6] Mr. Boyden stopped at a place where the embankment and the curve of the railroad did not prevent his obtaining a view which the jury may have estimated, from the testimony of the witnesses who made measurements, at anywhere from 140 to 208 feet. If he or Mrs. Boyden had descended from the surrey and gone to a point 5 feet from the track, a view of from 360 to 400 feet would have been had. An advance to a point between the north and south tracks would have afforded a view of greater extent, not definitely fixed by the testimony. It was their duty to stop, look, and listen at a place where stopping, looking, and listening would be effective. Phila. & R. Ry. Co. v. Le Barr, supra.

We are asked to rule as a matter of law, not only that the place where the plaintiffs stopped was not a place where stopping, looking, and listening was effective, but also that stopping, looking, and listening at a place nearer the tracks or between the tracks would have been effective, for it would be futile to hold that the plaintiffs, having stopped at a place where a clear view could not be obtained, must alight and proceed to another place where also a clear view which would be effective could not be obtained. It is apparent that the circumstances of the present case were such that the court could not hold as a matter of law that stopping, looking, and listening at a place closer to the first track, or between the first and second tracks, would have been effective.

What bearing the curve of the tracks, the embankment alongside of the tracks, the speed of the train, and other circumstances would have upon the probability of the plaintiffs being able to cross safely after having descended and proceeded to a place further advanced upon

the right of way, was for the consideration of the jury. That the jury could have found that even midway between the tracks looking and listening would not be effective is apparent from the testimony of the fireman, who was called by the defendant. He testified that he was looking out of the left side of the cab, and just as the train came around the curve he saw the team upon the north-bound track, that on which the train was approaching. If that is the fact, Mr. Boyden's view could not have extended further than where the train was when the fireman saw the team, and he could not have seen the train at a point where the accident could have been avoided, for the jury has found that the vehicle was struck before it left the tracks. Since the train may have come into view after they were committed to the act of crossing, the question of contributory negligence was for the jury. Kauffman v. Penna. R. R. Co., 237 Pa. 227, 85 Atl. 138.

[7] It has been urged that there was no evidence in the case to show that the plaintiff stopped at a usual or customary stopping place. There is evidence from which the jury could find that there was no available stopping place before crossing the tracks, other than where the plaintiffs stopped, and that was where the best view obtainable without alighting before crossing could be had.

The trial judge rightly declined to rule as a matter of law under the circumstances of this case that it was necessary in the exercise of due care that one of the plaintiffs should descend from the surrey and go forward for a better place to look and listen, for it cannot be concluded as an uncontradicted fact from the evidence that there was a clear prospect from any point to which one might have walked which would have prevented the accident.

We find no error in the refusal to charge as requested by the defendant, and the judgment is affirmed.