IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

### NOVEMBER TERM, 1902.

---

BLOOMFIELD D. WOLCOTT, ADMINISTRATOR, v. THE NEW YORK AND LONG BRANCH RAILROAD COMPANY ET AL.

*Argued June 3, 1902—Decided November. 10, 1902.*

When a railroad company assumes to protect a highway crossing, by a flagman, it is responsible for injuries received at that crossing, by a traveler on the highway, which have resulted solely from the negligence of such flagman; and that responsibility exists notwithstanding that the company is under no legal obligation to so protect the crossing.

---

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices VAN SYCKEL, FORT and GARRETSON.

For the rule, *Richard V. Lindabury* and *John S. Applegate.*

*Contra, Edmund Wilson.*

421

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This suit was brought against the New York and Long Branch Railroad Company, the Central Railroad Company of New Jersey, the New Jersey Southern Railway Company and the Pennsylvania Railroad Company, to recover damages for negligently causing the death of Paul Wolcott, the plaintiff's intestate. A nonsuit was granted in favor of the New Jersey Southern Railway Company at the close of the plaintiff's case. A verdict was directed in favor of the Central Railroad Company of New Jersey, and the question of the liability of the New York and Long Branch Railroad Company and of the Pennsylvania Railroad Company was submitted to the jury, who returned a verdict in favor of the latter company as against the plaintiff and in favor of the plaintiff as against the New York and Long Branch Railroad Company. This rule was allowed to the Long Branch company, and the two questions which it presents for decision are whether the evidence will support the conclusion, reached by the jury, that the death of the plaintiff's intestate was due to negligence of the company, or of any of its employes; and, further, whether the deceased was not guilty of contributory negligence.

On the first point the following facts are pertinent: At the crossing where the deceased was killed there are nine separate tracks, four of which are tracks of the Long Branch company and the remaining five tracks of the Jersey Southern. These tracks are not all parallel, those of the Jersey Southern diverging at a considerable angle from those of the Long Branch road. Although these tracks are owned by two different companies, they are all under the management and control of the New York and Long Branch company. Approaching the tracks from the direction in which the deceased was driving, the Jersey Southern tracks are first reached; then a triangular piece of ground is encountered, lying between the two systems of tracks, and then the tracks of the New York and Long Branch road. The distance from the first track of the Southern road to the last track of the Long Branch road, measured

along one side of the highway, is about eighty-two feet, and measured along the other side of the highway is one hundred and twelve feet. A flagman was kept at this crossing, by the New York and Long Branch company, to warn travelers along the highway of approaching trains. At the time of the accident this flagman had taken up his position in the triangular space already referred to. It was after dark, and he had his lantern in his hand. In just what part of the highway he stood was disputed. He testified that he was in the middle of the road; other witnesses say that he was on the south edge of it. After taking his position he watched for the approach of the train, which was one belonging to the Pennsylvania Railroad Company, and running over the New York and Long Branch company's tracks. He says that when he saw it appear he turned and then saw the decedent's wagon approaching the crossing; that it was then opposite the electric light plant, which was immediately adjacent to the first track of the Southern road, and that it (the wagon) was about to enter upon that track; that he swung his lantern and shouted a warning, but that the deceased continued on his way over the tracks until he reached the furthermost track of the Long Branch road, and was there run down by the train. The testimony of the decedent's wife, who was in the wagon with him, was to the effect that the lantern was not swung; that its light remained stationary.

Whether or not a duty rested upon the Long Branch company to protect this crossing by a flagman or not is immaterial. It assumed that duty, and, having done so, was bound to perform it with due care. Where the flagman stood and whether he waved his lantern or not as a signal that a train was approaching were matters in dispute. If he stood on the southern edge of the highway, not in the wagonway at all, as some of the witnesses say, and if he gave no signal with his lantern, as decedent's widow testifies, it cannot certainly be said, as matter of law, that he fully and carefully performed the duty which he had undertaken, of giving warning of the approaching train. It was for the jury to determine where he stood,

and what he did; and, if they found that he stood by the side of the road and gave no signal with his lantern, then to say whether he gave efficient warning to the deceased.

Other facts, in addition to those which have been recited, enter into the consideration of the question whether the deceased was guilty of contributory negligence. The conditions which existed in the neighborhood of the crossing, on the side from which the deceased approached it, show that there was a view down the tracks of the Long Branch road, in the direction from which the train was coming, at a point four hundred and seventy-five feet from the crossing; but that, as the distance decreased, the view was frequently interrupted by the presence of houses and other obstructions. The night was a dark one; and it does not appear that the deceased was familiar with the crossing. There were a number of electric and other lights in the neighborhood of the crossing, which illumined the surroundings more or less. The evidence is in favor of the conclusion that a bell was rung on the train, but decedent's wife says she did not hear it.

All of these facts, taken together, do not conclusively show contributory negligence on the part of the decedent. To what extent his view, in the direction of the approaching train, was impeded, before he reached the electric light plant, is unimportant; for, up to that time, the train had not come in sight. This is shown by the testimony of the defendant's flagman, who testified that, after going upon the crossing, he was "watching the train to come down the Long Branch northbound track," and then said "and when I saw it appearing, coming down, I turned and I saw this wagon coming right opposite the electric light plant." After reaching this building his view down the track was intercepted by it until he had passed beyond it. Although the engine bell was ringing at that time, it cannot certainly be said that he heard it, for his widow swears that she did not, and her opportunity for doing so was equally as good as his. After passing beyond the electric light building he almost immediately came to the first of the Southern railway tracks. Assuming that he then saw

the headlight of the approaching locomotive, what was he to do? Could he be at all certain that the train was not coming upon the very track he was then crossing? Was he less prudent in driving over it, and over the other tracks of the Southern road, than he would have been if he had remained on the first track until the train had passed, bearing in mind that there is nothing in the case to show that he was at all familiar with his surroundings? And, after he had crossed the Southern tracks and reached the triangular space, did he suppose that all danger had passed; that he had reached a place of safety, and could go on his way without further risk? Was he taken by surprise when he came to the tracks of the New York and Long Branch road, and, if so, was he less careful than a reasonably prudent man would have been in attempting to cross over them for the purpose of avoiding the train? All these and other questions present themselves in determining whether or not the deceased was guilty of contributory negligence. Their solution was clearly for the jury, not for the court; and the jury determined them in favor of the plaintiff.

In our opinion the evidence in the case fairly supports the finding of the jury, both on the question of the negligence of the defendants and on that of the contributory negligence of the plaintiff's intestate, and the rule to show cause should be discharged.