# Broadway Coal Mining Company v. Southard, et al.

(Decided September 20, 1911.)

## Appeal from Ohio Circuit Court.

1. Safe Place to Work—Negligence of Master.—It is the duty of the master to provide his servant with a reasonably safe place in which to work and with reasonably safe machinery and appliances with which to perform the services required by his employment and whether the employes, charged with the duty of inspecting and keeping it in repair were the superiors of the servant or merely his fellow servants, if they failed to exercise ordinary care to see that the machinery and appliances with which he had to work, were reasonably safe and suitable for his use, such failure constituted negligence for which the master was liable in damages if the servant was injured by such negligence.

2. Risk Assumed by Servant—Primary Duty of Master.—While it is true that the servant assumes the risk necessarily incident to his employment, the risk thus assumed must be considered with reference to the primary duty of his employer to furnish tools; and in fact all other instruments, means and agencies necessary to be used in the prosecution of his business, reasonably safe and secure for the purpose used.

BELCHER & SPARKS for appellant.

HEAVRIN & WOODWARD for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Appellee recovered of appellant in the court below $500.00 damages for personal injuries sustained while employed in its coal mine and engaged at the bottom of the shaft in the work of removing from the cage, as lowered from the tipple, empty cars and replacing them with others loaded with coal brought from the interior of the mine. His injuries were caused by a blow on the head from a piece of timber, two by four inches in size and 18 in length, which fell from the top of the shaft, greatly bruised his head and fractured his skull.

The piece of timber by which appellee was injured had been fastened with iron bolts to the frame of the tipple and beveled so that it caught on what is known

as the shoe of the cage causing the unloading of the cars; and this piece of timber, together with certain iron bars, supported the guide which kept the cage in place and sustained the force of the shock necessary to dump the loaded cars.

The piece of timber in question does not appear to have been unsound, but, according to the evidence, the wood work or guide to which it had been bolted and from which it fell, was old, patched and unsound, which allowed the belts to become loose and pull out, and the piece of timber mentioned to separate therefrom and fall on appellee's head. The evidence further showed that on account of the unusual strain on the guide at that place similar pieces of timber had previously fallen from the woodwork or guide and had to frequently be replaced. This was all known to the mine foreman, Jones, who was admittedly charged with the duty of inspecting and keeping in repair the machinery and appliances used in removing the coal from the mine.

Appellant's first contention is, that it was entitled to a peremptory instruction in the court below upon the ground that the evidence did not authorize the recovery of damages by appellee; and it is insisted in argument by its counsel in support of this contention that as the piece of timber which fell upon appellee's head was of sound material, suitable for the use made of it, and had been put in its proper place only three days before the accident, appellant's foreman did not know and could not by an inspection of it within that time, have discovered the loosening of the bolts which caused its separation from the woodwork or guide to which it was attached. This argument ignores the defective and unsound condition of the woodwork or guide to which the piece of timber which struck appellee was bolted, which, according to the weight of the evidence, appellant's mine foreman well knew, or by even a casual inspection could have discovered; indeed, one witness, Wakeland, testified that two weeks before appellee received his injuries he, Wakeland, warned the mine foreman of its dangerous condition. Estill Butler who was in appellant's employ testified as to the patched condition of the guide and said that it ought to have been discarded long before the accident occurred.

The evidence to which we have referred demonstrates that appellant's mine foreman actually knew of

the defective and unsound condition of the woodwork or guide to which the piece of timber that fell upon appellee was attached. It was, therefore, his duty to have replaced it with sound and suitable material and his compliance with this duty would have prevented the injuries received by appellee. As this evidence manifested negligence on the part of appellant and its mine foreman, but for which appellee would not have been injured, the giving of the peremptory instruction asked by appellant would have been error.

There was no proof whatever that appellee knew of the defective condition of the wood work or guide to which the timber that struck him was attached, or that he had an opportunity of discovering its defective condition, and it cannot be claimed that it was his duty to inspect it. His work placed him in the mine at the bottom of the shaft, and the machinery and appliances by which the coal cars were removed from and returned to the mine were under the control of and had to be inspected by other employes of appellant with whom he had no connection except as a subordinate and inferior. It was the duty of appellant to provide him a reasonably safe place in which to work and with reasonably safe machinery and appliances with which to perform the services required by his employment, and whether its employes charged with the duty of inspecting and keeping it in repair, were the superiors of appellee or merely his fellow servants. if they failed to exercise ordinary care to see that the machinery and appliances with which he had to work were reasonably safe and suitable for his use, such failure constituted negligence for which the master, (appellant) was liable in damages, if appellee was injured by such negligence.

As well said in Pfisterer v. Peter & Co., 117 Ky., 501, quoting from L. & N. R. R. Co. v. Foley 94 Ky., 224:

"The rule requiring an employer to provide reasonably safe and suitable machinery and appliances for the use of employes, and to keep them in reasonable repair while being used, is so just and fair that it has never been called in question by this court. But if an employer may in every case escape liability for injury to a subordinate employe by reason of the defective machinery, or appliances provided for his use merely because the latter does not show he exercised care and diligence to discover the character and condition thereof,

the rule would not amount to much as either an incentive to the employer to do his duty or protection to the employe against personal injury. The limit of inquiry in such a case as this is whether, as a matter of fact, the employe did, before exposing himself to danger, know the machinery or implements causing the injury to be defective. The rule, of course, does not apply where the examination and inspection is in the line of the employe's duty.''

While it is true that the servant assumes the risk necessarily incident to his employment, the risk thus assumed must be considered with reference to the primary duty of his employer to furnish tools, and in fact all other instruments, means and agencies necessary to be used in the prosecution of his business, reasonably safe and secure for the purpose used. And as said in Angell vs. Jellico Coal Mining Co., 115 Ky., 728:

''But this duty of the employer is the first and primary duty, and should at all times by the trial courts be kept steadily in view, and no construction of the law should be tolerated that needlessly exposes the servant to danger in the prosecution of the business of the master. Humanity itself demands this much consideration by the employer for the lives and safety of his servants, and the greater the danger to the servant the greater should be the care and caution demanded by the law of his employer.''

Huddleston's Admr. vs. Straight Creek Coal and Coke Co., 138 Ky., 506; Williams Coal Co. vs. Cooper, 138 Ky., 287.

It is further contended by appellant that the trial court erred in instructing the jury that if they found for appellee, they were to consider from the evidence whether his injuries were of a permanent character, and if so, allow him damages for same. This instruction was proper as there was some evidence from physicians, and manifested by the character of the injuries themselves, which conduced to show that there was a fracture of the skull, and that the injuries as a whole were and are of a permanent nature. This being true, the jury had the right to determine from the evidence whether appellee's injuries were of a permanent character and to consider that fact as an element in estimating his damages.

But if it could be said that the evidence failed to show appellee's injuries to have been of a permanent character, we would not be disposed to reverse the judgment on the ground that the instruction in question permitted a recovery for permanent injury, as we think it patent from the evidence that $500.00, the amount allowed by the jury, did not more than reasonably compensate appellee for the physical and mental suffering resulting from his injury, leaving out of consideration the question whether such injuries were or not permanent.

Appellant's final contention is, that on the trial incompetent evidence was admitted by the court below. The alleged incompetent evidence is found, it is claimed, in the testimony of Drs. Ennis and Smith, and consisted in certain statements from appellee as to his injuries and how they affected him, made to them.

The testimony of Dr. Ennis regarding the character of appellee's injuries, fairly shows, that his opinion as to the character and permanency of such injuries was based upon the condition in which he found appellee when he examined him, rather than from the statements of the latter complained of. Besides, we are not at liberty to consider the alleged incompetent testimony of Dr. Ennis, as the record fails to show that appellant objected to any of his testimony, or entered an exception thereto.

As to Dr. Smith's testimony, it is sufficient to say that all of it that was material was based alone upon the condition and symptoms of appellee at the time of his visits to and examinations of him; and Smith's opinion as to the character of his injuries was expressed after he was asked to exclude from his mind all statements made by appellee as to same; and we are also unable to find from the record that the opinion as thus given by him was objected to by appellant.

Failing to find any error in the instructions, or in the admission or rejection of evidence on the trial, that can be said to be prejudicial to appellant's rights, the judgment is affirmed.