## Louisville & Nashville Railroad Company v. Hurst's Administrator.

(Decided March 25, 1927.)

### Appeal from Bell Circuit Court.

1. Exceptions, Bill of.—If bill of exceptions as tendered is inaccurate, trial judge, under Civil Code of Practice, section 337, subd. 3, may correct it and file it as corrected, even after expiration of original time fixed for its tender, where tender itself was timely.

2. Railroads.—In action for death of driver of truck in collision with engine at grade crossing, evidence, that driver approached and went on crossing, although he could have seen approaching train for several hundred feet before reaching crossing, and electric signals warned him of approach of train, held to show, as matter of law, contributory negligence, defeating recovery.

3. Railroads.—A traveler on the highway in approaching a grade crossing is required to exercise due care to learn of the approach of trains and to keep out of their way.

4. Railroads.—In action for death at railroad crossing contributory negligence of decedent is complete defense, even though it be not sole cause of injury, but, if it is only such negligence as that but for which injury would not have occurred, it is still sufficient.

5. Railroads.—That engineer of train saw truck some distance before it reached the crossing did not impose on him duty to lessen speed of train in anticipation of collision, he having right to assume that

highway traveler, in sight of train, and in obedience to warning signals, would not go on crossing in front of approaching train.

WOODWARD, WARFIELD & HOBSON, ASHBY M. WARREN and LOW & BRYANT for appellant.

LEWIS F. DE BUSK, E. FRANK BAKER, B. B. GOLDEN, JAMES GOLDEN and O'REAR, FOWLER & WALLACE for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Reversing.

On the 29th of April, 1912, at about 4:12 in the afternoon, appellant's passenger train running north from Middlesboro toward Pineville, collided at a grade crossing a mile or two north of Middlesboro, with a truck going south on the highway toward Middlesboro, and appellee's intestate, the driver of that truck, was killed, and this is an action by his personal representative against appellant for damages because of his death, as alleged, brought about by the negligence of its agents in control of the train.

On the trial a verdict for the plaintiff of $10,000 in damages was returned, and from a judgment on that verdict this appeal is prosecuted, there having been previously one mistrial.

Appellees have entered a motion in this court to strike the bill of evidence and the bill of exceptions from the transcript, and the grounds are: (1) that while both were tendered within the time allowed by the order of the court, neither of them was actually filed by order of the court until more than two terms thereof had intervened, and (2) that the bill of exceptions actually filed on the tenth day of November, 1925, was not the same bill of exceptions tendered by appellant within the time allowed by the court's order.

These motions were passed to a hearing on the merits.

The facts disclosed by the record are that the verdict was returned and judgment entered thereon the 29th of January, 1925, and that on the 30th of January, 1925, defendant filed its motion and grounds for a new trial. Then on the 31st of January, 1925, the motion and grounds were overruled, the official reporter ordered to transcribe the proceedings on the trial and a carbon copy thereof, and tender same for filing on or before the

tenth day of the next term; and in the same order defend-
ant was "given until and including the tenth day of the
next regular term of this court in which to prepare and
tender for filing its bill of exceptions herein." Then on
the second day of the February term, 1925, and on the
24th day of that month a transcript and carbon copy of
the evidence was tendered, as well as a bill of exceptions,
and the court took them both under advisement. At the
succeeding September term of the court, there evidently
being some contention as to the correctness of the bill
of exceptions as tendered, the defendant offered to file an
affidavit as to certain things occurring on the trial, and
the court declined to permit the same to be filed, but two
days threafter at the same term entered an order filing
and approving the transcript of the testimony, but in its
order recited that further time was taken for the con-
sideration of the bill of exceptions. Thereafter at the
same term and on the tenth day of November an order
was entered approving the bill so tendered on February
24th, and filing the same. It appears, however, from
affidavits on file that before approving the bill of excep-
tions the court made such corrections in the subject mat-
ter thereof on the last page of the bill tendered on the
24th of February that it became necessary to rewrite or
retranscribe the whole of that last page, and this is the
basis of appellee's contention that the bill as tendered
in time was not the bill finally approved and filed by the
court on the tenth of November.

It is the very general custom in trial courts, where a
bill of exceptions is tendered in time, for the judge to take
time to examine the same before approving it, and if
appellee's second contention should be sustained it would
always be necessary for the trial court to approve a ten-
dered bill of exceptions before the expiration of the time
fixed for its filing in the original order. If after the ex-
piration of such time the trial judge in the interest of
accuracy and in the administration of justice should
strike out a clause in the bill as tendered, or even a word,
then he would have no power to approve and file the bill
because it was not the precise bill tendered within the
time. Obviously such a ruling would defeat the adminis-
tration of justice, and in many cases would practically
deprive a party of the right of appeal granted by law.

If the bill as tendered is not accurate the trial judge
has it within his power to correct the same and file it as

so corrected even after the expiration of the original time fixed for its tender, where the tender itself was made within the time.

Obviously in such cases the delay is that of the court, and when a party has tendered within the time his bill he has done all that can be required of him, for he has no power to compel the court to act upon it. In this case, as we gather from the record and the affidavits on file, there was much contention between the attorneys as to the correctness of certain features of the bill, and it was not the duty of the court to correct and approve the bill until satisfied as to the alterations to be made. The bill was tendered in time, and there is nothing to disclose that appellant and its counsel were more responsible for the delay in approving it than appellee and his counsel.

Under the provisions of section 337, subsection 3, Civil Code, it is the duty of a trial judge to correct a bill of exceptions tendered before approving the same, and when he does correct it and order it filed, even though it be at a subsequent term and after the time granted in the order for the filing, such order relates back to the day of the tender and the filing is as of that date. Smalling v. Shaw, 144 Ky. 454; Toner v. R. R. Co., 109 Ky. 41; Meaux v. Meaux, 81 Ky. 475; White v. Allen, 10 R. 1025; Striger v. Carter, 190 Ky. 319.

The motions to strike the bill of exceptions and bill of evidence are each overruled.

A number of errors are assigned as ground for reversal, none of which will be passed upon or considered except that refusing the motion of defendant for a directed verdict after the evidence had all been heard, the court having reached the conclusion from the whole evidence that plaintiff's intestate was guilty of contributory negligence as a matter of law.

The train was a light passenger train consisting of two coaches and the engine, was running on time and at about the rate of 25 miles an hour as it approached the crossing. Going north it was running on a straight track for approximately 1,000 or more feet before reaching the crossing. There is some negative evidence by witnesses showing they did not hear the train signal for the crossing

Decedent was the driver of a truck for a soft drink manufacturing establishment at Middlesboro, and had been such for several years. Upon the occasion in ques-

tion he and another were returning to Middlesboro from Pineville in the truck, decedent driving, and as they approached the crossing were traveling at the rate of twelve or fifteen miles an hour. Going south from Pineville to Middlesboro on the highway for several hundred feet before the approach to the crossing, the highway runs approximately parallel with the railroad, but about 300 feet from the crossing a curve begins and from then until within 100 or 150 feet of the crossing the curve continues, so that the actual crossing is a diagonal one, the railroad running approximately north and south, and the highway approximately north-east and south-west. From 150 to 200 feet from the crossing, for a short distance, a schoolhouse situated near the crossing and a rise in the ground near that schoolhouse obstruct the view of a traveler on the highway going south, of a train approaching from the north, but from that point to the crossing there is an unobstructed view of the straight railroad track for several hundred feet by which a train approaching from that direction may be seen. At the crossing there is an electric wigwag signal which automatically rings a bell as the signal for the approach of trains, and as an additional signal it moves backward and forward.

The only two witnesses introduced by the plaintiff who saw the collision were a taxi driver of Middlesboro, Cunningham, and his passenger, Burke. They going north approached the crossing about the same time that decedent did in his truck going south; they saw and heard the wigwag signal in operation, and stopped their machine a short distance from the crossing. They saw the signal in operation some 50 or 60 feet before reaching the crossing, and they saw the truck approach on the other side of the track, and witnessed the collision between the train and the truck. They could see the truck approaching the crossing but could not see who was in it, and the truck as it approached the crossing was traveling up grade at good speed, and drove on to the track right ahead of the approaching train. One of them saw the truck before they stopped their taxi but could not see who was in it.

The engineer testifies that he saw the truck going at a good rate of speed when it was some distance from the crossing and assumed that it would stop before reaching the crossing to permit the passing of the train; but

that as the train and truck both approached nearer to the crossing he saw the two men in the truck were engaged in a conversation, looking each other in the face and apparently unaware of the approach of the train, and he then reversed his engine and undertook to avoid the collision but was unable to do so.

Another witness for defendant who was a traveler on the highway passed over the crossing on foot just a short time before the collision, and a short distance beyond the crossing met the truck and its two occupants, and testifies, in substance, that they were engaged in conversation and looking at each other, and the witness seeing they were approaching the crossing and in imminent danger of a collision with the approaching train shouted at them and waived his dinner bucket as a warning of imminent danger; but says if they saw him they paid no attention to him and proceeded upon the crossing where the collision occurred. Both the engineer and the last named witness say, in substance, that the truck never did check its speed but proceeded upon the crossing at a time when the train was in sight, and when the electric signal was in operation.

These are the only four witnesses to the collision and to what occurred at the time. Their evidence as to the material facts is not in conflict.

It is shown beyond peradventure that the highway travelers in the truck approached this crossing and went upon it although they could have seen the train approaching for several hundred feet before reaching the crossing, and although the electric signal, provided for the safety of the public, warned them of the approach of that train and was at the time in full operation.

The law requires a traveler on the highway in approaching a grade crossing to exercise due care to learn of the approach of trains, and to keep out of their way. C. & O. R. R. Co. v. Williams, 148 Ky. 178. The duties of such a traveler, and those of the train operatives, are reciprocal, and if the crossing was a particularly dangerous one, as claimed, that duty as to each of them was increased, no more for one than for the other.

The evidence shows without contradiction that the occupants of the truck, for a distance of 150 feet or more before reaching the crossing, could have seen the approach of the train; that for that distance or approximately that they could have seen the electric signal as

other travelers did upon that occasion and could have heard it for 50 or 60 feet; that they were in an earnest conversation with each other as they approached the crossing, and apparently oblivious of the obvious danger they were going into, and that some 75 feet before they reached the crossing, and at a time when they had ample time to stop their truck and avoid the collision, they had a warning of the train's approach and of the danger of going upon the crossing.

This short statement of the facts makes it apparent that the collision occurred because of the negligence of decedent either in undertaking to cross ahead of the train he knew was approaching, or in failing to use his senses to see and hear what was going on around him to notify him of the approach of that train. If he knew of the approach and undertook to drive across ahead of the train there can be no recovery because he took his chances in so doing; if, on the other hand, in the exercise of ordinary care for his own safety, he failed to use his senses to see and hear what was going on around him and to pay heed to the warning that was given him, obviously his death was brought about by such lack of care, and not from any negligence of the appellant. The evidence points unerringly either to the conclusion that the occupants of the truck were so engrossed in their conversation with each other they did not use due care in approaching this crossing, or that they knew the train was approaching and thought they could cross ahead of it. Whichever state of case is true the directed verdict should have been given.

Contributory negligence is a complete defense, even though it be not the sole cause of the injury; but if it is only such negligence as that but for which the injury would not have occurred it is still sufficient. City of Harlan v. Parsons, 202 Ky. 358.

The case is not unlike that of Barrett's Admr. v. L. & N. R. R. Co., 206 Ky. 662, wherein a peremptory was approved at a diagonal grade crossing after there had been a warning.

The fact that the engineer saw the truck some distance before it reached the crossing did not impose upon him at that time the duty to lessen the speed of his train in anticipation of a collision. He then had a right to assume, as has often been written, that the highway traveler in sight of a train, and in obedience to the warn-

ing of the electric signal, would stop his vehicle and not go upon the crossing in front of the approaching train. But the evidence shows that when the parties in the truck were so near to the crossing and their conduct was such as to cause the engineer to suspect they were not aware of the approach of the train, he did reverse his engine and undertook to avoid the threatened collision, but then it could not be avoided. If an engineer sees some distance ahead of him on the track a person walking thereon, he has a right to assume that a normal human, knowing of the approach of the train which his senses could give him, would step off the track; and until there is something to put the engineer on notice that the trespasser on the track or the traveler on the highway has no notice of the approach of the train it is not incumbent upon him to lesson his speed, or take other steps to avoid a collision.

We are impelled, therefore, under the whole evidence in this case, to the view that but for the contributory negligence of the decedent the collision would not have occurred, and that, therefore, appellant was entitled to the directed verdict asked for.

The judgment is reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.