SARAH DI GIENDEMONICA, ADMINISTRATRIX AD PROSEQUENDUM OF THE GOODS, CHATTELS, ETC., OF DOMENICO DI GIENDEMONICA, DECEASED, PLAINTIFF-APPELLANT, v. PENNSYLVANIA-READING SEASHORE LINES, A CORPORATION, DEFENDANT-RESPONDENT.

Argued May 19, 1939—Decided September 22, 1939.

For the plaintiff-appellant, *Thomas G. Hilliard* and *Joseph Narrow*.

For the defendant-respondent, *French, Richards & Bradley* (*Floyd H. Bradley* and *Blaine E. Capehart,* of counsel).

The opinion of the court was delivered by

WELLS, J. This is an appeal from a judgment entered for the defendant upon the striking of the amended complaint on the ground that it did not set forth a cause of action. The suit arose out of a collision which occurred November 24th, 1937, between a locomotive owned and operated by the defendant company and an automobile truck, wherein plaintiff's intestate was riding, at a grade crossing in the borough of Pennsgrove, Salem county, New Jersey, at a point where Pitman street intersects the railroad tracks and right of way of the defendant company.

Plaintiff brought the suit to recover damages for the death of Domenico Di Giendemonica, alleged to have been caused by reason of the negligence of the defendant company.

The defendant moved to strike the allegations, as contained in the amended complaint on the ground that the same were frivolous and did not set forth a good cause of action against the defendant.

The amended complaint in substance alleged that the negligence of the defendant consisted of the following: (a) the defendant operated its locomotives and cars at the time and place specified at an unusual rate of speed and at a rate of speed that was greater than was usual at that place; (b) that by and with the consent and approval of the Board of Public Utility Commissioners the defendant immediately prior to November 24th, 1937, had operated its locomotives and trains at the crossing, at a rate of speed not in excess of five miles per hour, and was further negligent in that on said date and at said crossing, the defendant operated its locomotives and cars at a rate of speed greatly in excess of five miles per hour; (c) that for a long time prior to November 24th, 1937, defendant had operated its locomotives and trains over said crossing at a rate of speed not in excess of five miles per hour, and that as a result of defendant's continuous operation of its said locomotives and trains at said rate of speed, the traveling public, of which plaintiff's intestate was one, had become accustomed thereto, and governed themselves accordingly; that plaintiff's intestate had full knowledge of this practice and in operating his automobile governed himself in accordance therewith and in dependence thereon, but that on the day in question the defendant operated its locomotive and cars at a speed greatly in excess of five miles per hour and thus created a special circumstance, making the said crossing one of unusual peril and in this way obligating itself to erect and maintain at said crossing, by virtue of having made the same an unusually dangerous one, additional precautions and safety devices, such as gates, automatic lights or the stationing of a flagman to give warning to the traveling public of the approach of its said locomotives and trains; (d) that as a

result of defendant's continuous operation of its locomotives and trains at said rate of speed, five miles per hour became the usual rate of speed for said crossing, and the general traveling public in approaching and traversing said crossing governed themselves in accordance therewith, as did the plaintiff's intestate at the time of said accident, but that on the day in question defendant operated its locomotives and cars at a rate of speed greatly in excess of five miles per hour and at a rate of speed that was greater than was usual at said crossing.

Stated succinctly, plaintiff's contention is, that where defendant railroad company has, through long practice, known to the members of the general public, of whom plaintiff's intestate was one, led users of its crossing to anticipate the operation of defendant's trains at a speed, at that point, not in excess of a certain rate per hour, the increase in that speed or rate of operation of defendant's trains over said crossing, without notice to the public of the change in speed, or adoption of safety precautions by defendant company, constitutes a situation from which negligence may be inferred.

Plaintiff's counsel says that he has been unable to find any decision of a New Jersey court in which the question has been dealt with but cites as authority for his contention *Haller* v. *Pennsylvania Railway Co.* (*Pennsylvania Supreme Court*), 159 *Atl. Rep.* 10; *Klein* v. *United Railways and Electric Co.* (*Maryland Court of Appeals*), 137 *Atl. Rep.* 306, and *Ernst* v. *Hudson River Railroad Co.*, 39 *New York Court of Appeals Report* 61.

We shall not take the time to point out the many distinguishing features between the above cited cases and the instant case. Suffice it to say, that an examination of the said cases leads to the conclusion that they are not in point and do not support the plaintiff's contention. We think that the law governing the question raised in this appeal has been settled by the principles enunciated by the courts of this state, and, if we are correct in this, then cases decided by the courts of other states on unrelated questions cannot control.

In the first place it will be noted that the complaint charges

no violation of a statutory duty or rule or regulation of the Board of Public Utility Commissioners or local ordinance or the creation or maintenance of any obstruction which might render the crossing extra hazardous. It was an unprotected crossing and the railroad company had not voluntarily assumed to protect it. If it had then it would be bound to use due and reasonable care in so doing. *Wolcott* v. *The New York and Long Branch Railroad Co.*, 68 *N. J. L.* 421; 53 *Atl. Rep.* 297.

As the learned trial court said in striking the complaint:

"If a railroad company can be charged with negligence because it caused a train to be operated faster than the usual or customary speed, why can't it by the same token be charged with negligence because a train passes a particular crossing or street earlier or later than it was customary for the train to go by; and why could it not be charged with negligence for increasing train service if the accident happened before it became the custom for the railroad company to operate the additional train or trains? If such were the law, railroads would be liable in damages for a violation of a custom rather than a violation of a duty imposed by statute or other lawful authority."

What the plaintiff is really trying to do is to substitute an alleged custom on the defendant's part for the exercise of due care at a place of known danger on the part of the plaintiff's intestate. Custom or no custom, a railroad crossing as a matter of law is a place of known danger and plaintiff's intestate was bound by law to recognize it as such.

The legislature has not limited the speed at which trains may be operated by the railroads. The Supreme Court in the case of *Moore* v. *Central Railroad Co.*, 24 *N. J. L.* 268, said many years ago:

"The fact is notorious throughout the country that the public exigencies of travel and of mail transportation demand and require from railroad companies the running of fast trains. The great *desideratum* of passengers is speed, and so pervading is its influence that no restraint has, as yet, been put by law upon the rapidity with which public roads may be crossed."

This is doubly true to-day. It must be assumed by the courts that the public encourages, even if it does not demand, such speed. The traveling public, however, is protected by statutes enacted for safety. The legislature requires that notice boards shall be placed at all crossings, and, also that a bell shall be rung, or a steam whistle be sounded, for at least three hundred yards before a locomotive crosses a common road.

When, however, a railroad company has created at a crossing a place of extra danger, it is bound to use extra precautions. *Horandt* v. *Central Railroad Co., 78 N. J. L. 190; 73 Atl. Rep. 93.* The plaintiff is attempting to extend this well known rule of law to include the speed of trains.

The question of the duty of a railroad to give additional warning of the approach of a train has been fully discussed in *New York, &c., Railroad Co.* v. *Leaman, 54 N. J. L. 202,* where (at *p.* 204), after referring to the statute requiring road crossing signals, this court said:

"Questions touching the duty of extra statutory care have arisen in cases where a crossing has been accused of possessing unusual features of danger. In such cases it has been held that the company is under a duty to maintain flagmen or gates at the crossing. But this duty only arises when this peculiarly dangerous feature is in consequence of the acts of the company itself in constructing its road or buildings." See, also, *Pennsylvania Railroad Co.* v. *Matthews, 36 N. J. L. 531.*

Plaintiff cites *Wolcott* v. *The New York and Long Branch Railroad Co., supra; Passarello* v. *West Jersey and Seashore Railroad Co. (Court of Errors and Appeals), 98 N. J. L. 790,* and 33 *Cyc.* 946, to the effect that where a railroad company assumes to protect a highway crossing by a flagman, it is responsible for injuries received at that crossing by a traveler on the highway, which have resulted solely from the negligence of such flagman; and that responsibility exists notwithstanding the company is under no legal obligation to so protect the crossing; and plaintiff argues from this that the defendant in the instant case occupies a similar position, in

that it had voluntarily assumed to protect the crossing in question by operating its locomotives and trains at a speed not in excess of five miles per hour, and that it was bound to continue to do so, and, at least, upon deciding to terminate said protection, to give adequate notice thereof, so that the traveling public would not be misled.

We are unable to concur in these views. In approving of the principle enunciated by the Supreme Court in the Wolcott case, *supra,* Mr. Justice Parker, speaking for the Court of Errors and Appeals, in the Passarello case, *supra,* said:

"In fact, the existence of a long line of decisions in this court and the Supreme Court, prior to the enactment of the acts of 1909" (the Railroad Crossing acts) "in which expressly or *sub silentio* the action or non-action of a flagman, or the open condition of crossing gates, or the like, have been treated as in effect an invitation to cross, points to the implication that under such circumstances the primary negligence of the railroad company was clearly inferable."

Certainly by no stretch of the imagination can it be said that a custom of locomotives and trains to travel over this crossing at a speed of not more than five miles per hour operated in effect as an *invitation* to the plaintiff to cross in the face of a train approaching at a greater speed than five miles an hour and in spite of statutory warnings given of its approach.

In the last analysis, the plaintiff's whole claim to recovery against the defendant rests upon an alleged custom, not on negligence. This court cannot countenance such a theory, for such a rule would permit a traveler, who was familiar with an unprotected grade crossing and who saw a train approaching the crossing, to disregard the statutory road crossing signals given for his safety and all observations which he is legally bound to make and to substitute in their place and stead reliance upon what he believes to be the customary speed of a train.

Furthermore, we are in accord with the observation made by this court in *Green* v. *Erie Railroad Co.,* 65 *N. J. L.* 301; 47 *Atl. Rep.* 418, to the effect that in the present age of rapid

transportation and increased use of the highways instead of relaxing in the least degree the legal rules of caution required to be observed by those attempting to drive vehicles over railroad crossings that present conditions demand even a more strict adherence to those rules.

The learned trial court in the instant case held that there was no authority for holding as claimed in the complaint, a railroad company liable for not protecting an unprotected crossing in the event it caused a train to pass at a greater speed than was customary; and since there was no allegation of a violation of a statutory or other rule of lawful authority he ordered the complaint to be stricken because it failed to state a cause of action. With this we concur.

The judgment is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 15.

*For reversal*—None.