9 N.J. Super. 222 (1950)
75 A.2d 900
MAE M. STEWART, ADMINISTRATRIX, ETC., PLAINTIFF-APPELLANT,
v.
HENRY K. NORTON, TRUSTEE, ETC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 6, 1950.
Decided October 11, 1950.
*223 Before Judges JACOBS, BIGELOW and JAYNE.
Mr. Samuel Doan argued the cause for the appellant (Mr. Charles C. Stalter, attorney).
Mr. Charles S. Barrett, Jr., argued the cause for the respondent (Messrs. Lum, Fairlie & Foster, attorneys).
The opinion of the court was delivered by BIGELOW, J.A.D.
This action results from a grade crossing accident. On a dark and snowy winter afternoon, plaintiff's decedent was driving his automobile along Warburton *224 Avenue, in Hawthorne, and across the tracks of the New York, Susquehanna & Western Railroad, when he was struck by the locomotive of an on-coming train, and killed.
There are three tracks at this point. On one of them, which was used as a siding, were standing a dozen coal cars that screened to some extent the approaching train. The crossing was protected on each side of the railroad by wigwag signals which were swinging, and electric bells which were sounding, while decedent was approaching and when he entered the crossing. For a long time, however, the apparatus had been out of order, so that not only when a train was approaching but often when no train was near, the wigwag would start up and the bells begin ringing. There was evidence from which the jury might conclude that decedent was aware of this condition. The plaintiff charged the defendant (who as trustee was operating the railroad) with negligence in the placing of the coal cars and in allowing the crossing warning devices to remain out of order. The learned trial judge instructed the jury that if there was any negligence on the part of the defendant, it was in the placing of the coal cars on the siding. "If that was not negligence, then the defendant is not guilty of any negligence in this case." The jury brought in a verdict for defendant.
The question argued before us is whether the judge erred in refusing to submit to the jury the issue whether the defendant was guilty of negligence in permitting the crossing signals to remain out of order. We will proceed on the theory that there was negligence in this respect, for a company that voluntarily installs a signal bell at a crossing, is bound to use due care in the upkeep and operation of the device. Wolcott v. N.Y. & L.B.R.R. Co., 68 N.J.L. 421 (Sup. Ct. 1902); Brown v. Erie R.R. Co., 87 N.J.L. 487 (E. & A. 1915); Rendino v. Davis, 99 N.J.L. 213 (E. & A. 1923). The traveller has a right to assume that the bell will ring if a train is about to pass the crossing. Berry v. Penn. R.R. Co., 48 N.J.L. 141 (E. & A. 1886). And see Rest. Torts (Negligence), § 301, comment F, and also R.S. 48:12-84. *225 But the defendant's negligence would be immaterial and should not enter the deliberations of the jury unless it may have been a proximate cause of the accident. Smith v. Public Service Corp., 78 N.J.L. 478 (E. & A. 1910). A warning signal that clangs alarm when no danger threatens, may be likened to the boy in the fable who cried, "Wolf, wolf!" A traveller who has been deceived by the signal on previous occasions, may be tempted to disregard it; so that the crossing is not a great deal safer than if no signal apparatus had been installed. But the plaintiff must go further; the defective wigwags and bells cannot be considered a proximate cause of the accident unless their presence created a hazard. Horandt v. Central R.R. Co., 78 N.J.L. 190 (Sup. Ct. 1909); approved, s.c., 81 N.J.L. 488 (E. & A. 1911). The meaningless ringing of a bell at the crossing might be a source of danger if it were so loud as to down the sound of the approaching train, but the evidence indicates that this was not the fact in the case before us, and appellant's counsel does not predicate his argument on this basis. Instead, he argues that a crossing bell that rings whether or not a train is coming, is an invitation to travellers, indicating that they may cross the tracks in safety. He urges that such a bell is like crossing gates that remain upright when they should be down, or like a bell that does not ring at all. The assurance given by the open gates or the silent bell is readily grasped, Passarello v. West Jersey, etc., R.R. Co., 98 N.J.L. 790 (E. & A. 1923), but the clamor of the alarm cannot be construed to mean that no train is at hand.
There was no error in withdrawing from the jury the question of negligence in failing to keep the signal system in repair. The judgment is affirmed.
A dissenting opinion was delivered by JAYNE, J.S.C.
My consideration of this case obliges me to disagree with the conclusion expressed by my associates. I acquiesce in the following passages contained in the majority opinion: "The crossing was protected on each side *226 of the railroad by wigwag signals which were swinging, and electric bells which were sounding, while decedent was approaching and when he entered the crossing. For a long time, however, the apparatus had been out of order, so that not only when a train was approaching but often when no train was near, the wigwag would start up and the bells begin ringing. There was evidence from which the jury might conclude that decedent was aware of this condition. * * *
"We will proceed on the theory that there was negligence in this respect, for a company that voluntarily installs a signal bell at a crossing, is bound to use due care in the upkeep and operation of the device. Wolcott v. N.Y. & L.B.R.R. Co., 68 N.J.L. 421 (Sup. Ct. 1902); Brown v. Erie R.R. Co., 87 N.J.L. 487 (E. & A. 1915); Rendino v. Davis, 99 N.J.L. 213 (E. & A. 1923)."
There was also testimony that thirteen freight cars were standing on a siding north of the crossing and twelve south of it.
In that posture of the evidence, the trial judge instructed the jury:
"Now, it has been my ruling in this case that if there was any negligence on the part of the defendant in this case, it was because it placed its cars on that middle siding at that particular location, under the weather conditions as then existed, and if that was not negligence, then the defendant is not guilty of any negligence in this case. * * * And so, if the defendant is chargeable with the cause of this accident, it is charged with negligence, it must be because the fact that the placing of those cars at that location under the circumstances was the negligence. There is no evidence in this case from which any other negligent act could be concluded.
"Now, if the defendant was not negligent because of this act, or those acts, in the placing of the cars at that location  and its negligence in that respect would be because it partially obstructed the view of a person crossing the tracks to an extent that it interfered with the view such as to cause the accident  if that is not the negligence, as I say, then the defendant is not guilty of negligence, and you must find a verdict of no cause for action in favor of the defendant, if you so decide that was not negligence."
It is to be conceded that the situation of the freight cars near the crossing was a condition to be considered together *227 with all other evidence of the surroundings and it must, I think, be conceded that the dereliction of the defendant in the maintenance of the crossing signal plus the knowledge of the decedent of it, was also a relevant and material circumstance appropriately to be considered by the jury.
I quote the exception taken by counsel for the plaintiff:
"I take exception to that portion of your Honor's charge where your Honor has strictly limited only to the consideration of the jury the placing of the cars on the siding as they were, in so far as negligence of the defendant was concerned. My contention is that all of the surrounding facts should be taken into consideration."
Yet, the trial judge informed the jury: "There is no evidence in this case from which any other negligent act could be concluded." Indubitably, the failure of the defendant to exercise due care in the operation of the signal was a negligent act which "could be concluded" from the evidence. Nevertheless its consideration in its true character was entirely inhibited. Assuredly the alleged contributory negligence of the decedent should have been determined upon consideration of the entire environment in which he was placed. Napodensky v. West Jersey & S.R. Co., 85 N.J.L. 336, 88 A. 1033 (E. & A. 1913).
My associates acknowledge that there was proof of the negligence of the defendant in the failure properly to maintain the crossing signal, but I conceive their persuasion to be tantamount to the conclusion that neglect in the care of a crossing signal which permits it to operate continuously without any relation to the approach of trains when known to the highway traveler cannot as a matter of law be the natural, probable, and efficient cause of a collision at the crossing. From such a conclusion I must respectfully dissent.
Basically I do not believe that trial judges should indulge in metaphysical distinctions and psychological dialectics in resolving whether or not the question of proximate cause should be submitted to or withdrawn from the consideration of the jury.
*228 Indeed, I think I am justified in stating that an examination of our numerous authorities will disclose that where the negligence of the defendant is proved with respect to an act or omission associated with the circumstances of the mishap, the question of its proximate causal relationship is rarely to be excluded from the consideration of the jury.
Justice Brogan, delivering the opinion of the Court of Errors and Appeals in Belperche v. Erie Railroad Co., 111 N.J.L. 81, 166 A. 463 (E. & A. 1933), remarked: "This court has said repeatedly that whether the alleged negligence was the proximate cause of the damage done is generally a question for the jury."
It has always been my understanding of the rule that in order for a trial judge to assume to determine the question of proximate cause as a matter within his function, the facts must not only be undisputed, but the inferences to be drawn from those facts must be such that fair-minded men ought not to differ about them. Podolsky v. Sautter, 102 N.J.L. 598, 133 A. 199 (E. & A. 1926); Parave v. Public Service Interstate, &c., Co., 109 N.J.L. 155, 160 A. 375 (E. & A. 1932).
Justice Trenchard recognizing the rule defined its exception in this fashion: "But if there is no evidence (i.e., logical and reasonable inferences) connecting the alleged negligence with the injury, or if it is obvious that the act or omission was not the natural and proximate cause thereof, the question is for the court." Smith v. Public Service Corp., 78 N.J.L. 478, 75 A. 937 (E. & A. 1910).
What a reasonably prudent person would have done or refrained from doing in a zone of extraordinary danger, harassed and confused by the culpable dereliction of another, and what inferences fair-minded men would draw from all the surrounding circumstances respecting the efficient cause of his course of conduct constitute propositions which under our procedure for the administration of justice belong to the jury under proper instructions of the court.
*229 In the present case, what mental reaction would the negligence of the defendant naturally create in the mind of such a motorist? Would it not induce a state of mental perplexity? Would it not tend to distract his attention and thus reduce his opportunity to hear other sounds of the approaching train? Would it not create mental uncertainty, thus pragmatically increasing the danger of a chance collision rather than serving its proper purpose as a reliable warning? If it had not been for the negligence of the defendant in the operation of the signal and the decedent's consciousness of it, would the decedent in fact have entered the crossing at the moment and in the manner indicated by the testimony? It was snowing. The evidence reveals that the decedent stopped, looked, and listened.
The foregoing are some of the kindred questions which in my judgment ought to have been submitted to the jury.
I surmise that my associates recognized as decisive the circumstance that the crossing signal, however negligently maintained, was by chance operating when the decedent chose to enter the crossing. I envision the following hypothetical and, indeed, likely situation. Suppose that by reason of the carelessness and negligence of the railroad company such a signal device was permitted to operate intermittently for indeterminate periods of time without any correlation to the approach of trains, and that two motorists were aware of the characteristics of the negligent operation of the signal. The first motorist amid all the other circumstances of the present case, knowing the imperfections of the signal and that it did not constitute a reliable warning, entered the crossing at a moment when the signal had temporarily ceased to operate and was killed. The closely following motorist possessed of the same knowledge of the unreliable operation of the signal and of its customary intermittent transformation into an uncertain and unreliable warning, nevertheless entered the crossing at a moment when the signal was displaying its warning and was killed by a train which approached the crossing from an opposite direction.
*230 The representatives of both decedents instituted actions predicated upon the negligence of the defendant in failing to observe the common law duty to exercise reasonable care in the maintenance of the crossing signal. Is it to be adjudicated as a matter of law that although both drivers were activated by the same state of uncertainty occasioned by the persistent negligence of the railroad company, one can and the other cannot have his cause of action determined by the jury because of the fact that in such circumstances the latter entered the crossing when the signal happened to be displaying danger?
My somewhat superficial research of the authorities has exposed three cases which bear a factual resemblance to the case before us. Maryland Electric R. Co. v. Beasley, 117 Md. 270, 83 A. 157 (Ct. of App. 1912); Wells v. Ballimore & Ohio Southwestern Ry. Co., 153 Ill. App. 23 (1910); Cincinnati, N.O. & T.P. Ry. Co. v. Champ, 104 S.W. 988 (Ct. of App. Ky. 1907). It is significant that in all of the cases the issue was presented to the jury.
Intertwined as the questions of proximate cause and contributory negligence were in this case and indeed usually are, I am of the opinion that both should have been submitted to the jury in the light of all the evidence.
It is accordingly my conclusion that the judgment under review should be reversed and a new trial directed.