9 N.J. Super. 275 (1950)
76 A.2d 31
ELIZABETH W. GIRARDIN, ADMINISTRATRIX, ETC., PLAINTIFF-RESPONDENT,
v.
NEW YORK & LONG BRANCH RAILROAD COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 25, 1950.
Decided October 16, 1950.
*276 Before Judges JACOBS, BIGELOW and JAYNE.
Mr. Theodore D. Parsons argued the cause for the respondent (Messrs. Parsons, Labrecque, Canzona & Combs, attorneys).
Mr. Robert V. Carton argued the cause for the appellant (Mr. William F. Hanlon, attorney, and Mr. J. Victor Carton, of counsel).
*277 The opinion of the court was delivered by BIGELOW, J.A.D.
Plaintiff sued the New York & Long Branch Railroad Company and the Pennsylvania Railroad Company for damages arising from the death of her husband in a grade crossing accident. Judgment was entered in favor of the Pennsylvania Railroad Company, the operator of the train that struck decedent, and in favor of plaintiff, and against the New York & Long Branch Railroad Company, which owned and controlled the tracks and the crossing gates. The latter company appeals.
The principal issue of fact between the plaintiff and the appellant was whether or not the safety gates had already been lowered to a warning position when the decedent entered the crossing. But there was another factor injected into the case, the sufficiency of one of the gates on the west side of the railroad tracks. That is the gate that decedent passed just before he reached the tracks. He was afoot, walking along the sidewalk a few feet from the base to which the gate is attached. The wooden arm that constitutes the gate, when lowered as a warning, swings to a horizontal position over the roadway. At one time there was a subsidiary arm, upon the same base, that swung across the sidewalk whenever the large gate was lowered over the roadway. But the sidewalk gate had been removed at some time before the accident, although the gears which had controlled the movement of the sidewalk gate were still attached to the base. It was this absence of the sidewalk gate that, according to plaintiff, made the protection of the crossing insufficient.
The appellant requested the court to instruct the jury that no law required it to place gates over the sidewalk. The request was refused and instead, after informing the jury that the statute "does not point out particularly where the gates should extend, except it contains a provision `over the crossing,'" the court added that "it is for you to determine the extent of the crossing and whether or not the gates in this case did extend to the extent provided by the statute." And later in the charge, the court said that gates are placed *278 at crossings for the purpose of giving warning, "and secondly, the gates are required to prevent pedestrians or vehicles or those using the public highway from going over while they are down."
The effect of the charge was to permit the jury to infer that the railroad was in duty bound to provide a gate across the sidewalk and that its failure to do so constituted actionable negligence. In this the court erred.
No statute required the installation of any protective devices at this crossing. R.S. 48:12-54 and 58 are not shown to be applicable. And no situation of peculiar danger was alleged in the complaint or proved that might raise a duty to install extra-statutory safeguards. Cf. Di Giendemonica v. Penn-Reading Seashore Lines, 123 N.J.L. 296 (E. & A. 1939). But the appellant had in fact established safety gates at the crossing and so was bound to use due care in the upkeep and operation of the gates. Stewart v. Norton, 9 N.J. Super. 222 (App. Div. 1950), and earlier cases there cited. The extent of the appellant's duty was measured by the gates actually at the crossing. The construction of gates across the roadway did not raise a duty to maintain gates across the sidewalk.
The statute to which the court referred in the charge is R.S. 48:12-84, which enacts that a traveller shall generally be entitled to assume that the safety gates are in proper order and will be properly operated. It contains the expression "at any crossing," but not the phrase which the court mistakenly thought it included "over the crossing."
The court, in saying that gates are required to prevent pedestrians from going over the tracks while they are down, relied on James v. Delaware, L. & W.R.R. Co., 92 N.J.L. 149 (E. & A. 1918). The plaintiff in that case walked along the railroad right-of-way to a street crossing which she entered at a point between the safety gates and the rails, and she then turned to cross the tracks and was struck by a locomotive. A judgment for the railroad company, based on a directed verdict, was affirmed on the ground of contributory negligence. *279 To reach this conclusion, the court held that the crossing statutes of 1909, now R.S. 48:12-82 and 84, were intended for the protection of travellers who came along the highway to the crossing and not for the benefit of those who arrived at the crossing along the right-of-way, as did Miss James. Chancellor Walker, discussing the statute, repeatedly used the word prevent; for example: "The manifest legislative intent was to protect the traveling public at any crossing  that is, to prevent a member of the public from continuing traveling beyond a safety gate extending over the highway crossing along the edge of a railroad company's right-of-way, when down, which would give warning of danger and actually prevent a person from going onto the tracks and getting into a place of danger, except by the most deliberate acts on his part." The court also said, "Both flagmen and gates are for the purpose of warning the traveling public as to the danger of, and preventing them from, crossing."
The appellant's duty in respect to the gates arises, we repeat, from its action in establishing gates at this crossing. In the James case, the Chancellor was not considering whether the railroad company was under a duty to maintain a gate across the sidewalk and what he said cannot properly be construed to extend the appellant's duty so as to require a sidewalk gate. Furthermore, Chancellor Walker was not formulating instructions for a jury. The word prevent should not be used in the charge unless coupled with some such qualifying phrase as was employed by the Chancellor. Undoubtedly he had in mind the light, wooden bar that usually comprises the gate.
We have mentioned that at one time a sidewalk gate had been part of the crossing protection. While the evidence was vague, there was enough to permit a finding that it had been attached to the base and in operation until shortly before the accident, which occurred December 9, 1944. Mrs. De George, who worked at the Sigmund Eisner Company factory close by the crossing, testified that the sidewalk arm was still there "about 1944, or something like that." Burd testified it was *280 there when "I worked in Eisner's in 1944." There was posted at the crossing no "Out of order" sign of the kind mentioned in R.S. 48:12-84. What the court said on that subject may have led the jury to believe that the absence of the sign, coupled with the failure of the company to restore the sidewalk gate, might of themselves justify a verdict for plaintiff. In our opinion, the objection of appellant to this part of the charge was well founded.
On the pleadings and evidence in this case, the issue was simply,  Were the gates on the side from which decedent approached, down, in a warning position  or were they upright, in an all-clear position  when decedent passed within five or ten feet of the base of the gate on his way on to the tracks? If the gates on the side from which decedent approached were then up, the appellant was negligent and no negligence by decedent appears, and a verdict for plaintiff follows. But if the gates were down, it was the decedent and not the appellant who was negligent, and the verdict should have gone the other way.
Judgment reversed. Costs to await the event. A new pretrial conference should be had promptly.