## LAYMAN

v.

## CHESAPEAKE & O. RY. CO. et al.

Court of Appeals of Kentucky.

March 19, 1954.

Thomas Burchett, S. S. Willis, Ashland, for appellant.

Browning & Gray, Ashland, for appellees.

STEWART, Judge.

In this tort action plaintiff, as administratrix, sought to recover damages in the sum of $30,000 for the alleged wrongful

death of Mary Katherine C. Carr, as the result of a collision between an automobile driven by deceased and a Chesapeake & Ohio Railway Company train, under the operation of engineer E. C. Huddleston and fireman O. E. Adams. From a verdict in favor of the railroad and its employees, this appeal is taken. We shall herein refer to the parties as "plaintiff" and "defendants," and to the railroad as "the C. & O."

There is but little conflict in the essential facts. The collision took place on November 11, 1948, at a point where the C. & O. tracks cross Fifteenth Street in Ashland. At the time, the westbound C. & O. passenger train No. 3 was approaching the station, located between Eleventh and Twelfth Streets in Ashland. At the crossing where this accident occurred the C. & O. maintains double tracks extending in an easterly-westerly direction, which are used only for passenger traffic. They are without curves for a distance of several blocks east of Fifteenth Street, from which direction the train approached. The southern track is used by eastbound trains, while the northern track is used by westbound traffic. Fifteenth Street runs at right angles to these tracks.

Just prior to the accident, deceased had driven down Central Avenue, one-half block south of the railroad tracks. Upon reaching Fifteenth Street she made a left turn and continued in a northerly direction toward the crossing. The warning flasher lights, located near the tracks and to the right of deceased, were operating as she drew near the railroad. There is some evidence that she stopped for a few seconds between Central Avenue and the south side of the tracks. She then attempted to drive on, whereupon, as she reached the westbound track on the far side, her automobile was struck by the train, which was running at a speed estimated to have been between 15 and 25 miles per hour. A city ordinance of Ashland limits the top speed of trains to 25 miles per hour. There is no testimony definitely fixing the speed at which deceased was driving. Witnesses for both sides stated the train was very near the crossing when the automobile

pulled into its path. The vehicle was dragged 105 feet before it fell from the engine's path.

In 1948 the C. & O. installed and has since maintained a warning system of flasher lights in the city of Ashland at all points where the passenger line tracks bisect these streets. This flasher light system is maintained from Twelfth Street in the western part of the city near the passenger station to Twenty-ninth Street in the eastern section of the city. For all trains operating in a westerly direction, the system works automatically. When a westbound train, such as No. 3, enters the Eighteenth Street block, the lights begin to flash as far west as Fifteenth Street. No operator can control the operation of these lights manually. With respect to eastbound traffic, the flasher lights work automatically at like intervals of three blocks but, because it is necessary to conduct certain switching operations for passenger cars at the station near Twelfth Street, a watchman in the tower at Thirteenth Street can exert manual control over the operation of the flasher lights for eastbound trains as far as Sixteenth Street.

On the particular day in question a switch engine was sitting on the eastbound track at the Fourteenth Street crossing, preparing to perform the customary switching operations after the arrival of No. 3. It is not denied that, as Mrs. Carr approached the crossing, the blinker lights were operating properly. Both defendant employees testified that not only was the whistle blown but also that the bell was ringing continuously as the train drew near Fifteenth Street. Several of plaintiff's witnesses indicated they did not hear either signal. Decedent, a woman of 53, had lived in Ashland all her life. She was familiar with the crossing, having used it frequently.

It was established that the flasher signals which faced deceased as she approached the crossing stand 40 feet from the first rail of the south track. Just to the right stands a two-story garage somewhat closer to the rails. Defendants introduced certain photographs taken from Fifteenth

Street and facing in the general direction from which No. 3 was moving. According to defendants' witnesses, a person sitting in an automobile 40 feet from the south rail of the westbound tracks, or just opposite the flasher signal, could see approximately 135 feet in an easterly direction. At a distance of 33 feet from the same rail, the view is unobstructed for some 537 feet. Finally, at a distance of 30 feet, visibility extends for 2870 feet.

The C. & O. tower operator at Thirteenth Street, who, as we have stated, had manual control of the flasher lights between that point and Sixteenth Street, testified that as the switch engine stopped at Fourteenth Street, he turned off the signals. He explained that as No. 3 drew near, all the warning signals began to operate automatically.

At the close of both the evidence for plaintiff and for defendants, the latter entered a motion for a directed verdict, each of which the trial court overruled, defendants reserving an exception. The case was thereupon submitted to the jury with the result we have already mentioned.

■ At the outset, plaintiff argues that the trial court erred in refusing to give instructions "A" and "B", offered by her, and thus failed to present her theory of the case to the jury. The first instruction is what may be termed a "dangerous crossing" instruction; the second embraces the duty of deceased with regard to negotiating such a crossing. In addition, plaintiff insists that the first and second instructions that were given were also prejudicial to her. Whether any errors were committed with respect to instructions offered, or in regard to those given, we deem it unnecessary to decide, because, from the evidence recited, we are drawn to the inevitable conclusion that deceased was guilty of contributory negligence as a matter of law and that defendants were entitled to a directed verdict.

■ Conceding arguendo there is some evidence from which the jury may have found defendants guilty of negligence, both

in the maintenance of conditions as they existed at or near the crossing and also in the operation of the train, such negligence must have been the proximate cause of the mishap before recovery may be permitted. See Hunt's Adm'r v. Chesapeake & O. Ry. Co., Ky., 254 S.W.2d 705. Certain duties are imposed upon the person injured in a case such as this and his or her failure to fulfill such duties will bar recovery, if such failure contributed to the cause of the accident.

■ Plaintiff has attempted to show that had decedent actually looked to the east, her view would have been obstructed by a building standing near the tracks. The physical facts established by the photographs which defendants introduced rebut this assumption. But, admitting plaintiff's contention is true, deceased was not thereby relieved of all obligation to exercise reasonable care for her own safety. Such a condition would, if anything, have imposed a greater duty upon her. A driver of an automobile whose view is obscured by any condition must exercise care commensurate with the factual situation and proceed with more caution than where he has an unobstructed view. Nashville, C. & St. L. R. Co. v. Stagner, 305 Ky. 717, 205 S.W.2d 493.

■ The evidence that No. 3 was very near the crossing when deceased continued across was not rebutted. We have written that the duty imposed upon every man to exercise care for his own safety requires that in approaching a railroad track, he must use his senses in a way that ordinarily prudent persons would do under similar circumstances, in order to determine whether it is safe to cross a track at that time. Where the facts make it certain that a traveler could have seen an approaching train in time to avert a collision had he looked properly, he will not be heard to say he looked but did not see. See Nashville, C. & St. L. R. Co. v. Stagner, cited above.

■ Plaintiff would have us decide that the habitual presence of switch engines standing still on the eastbound track near Fifteenth Street constitutes an invitation

for all persons to continue blindly over the railroad tracks, and this in spite of the fact that the warning signals were flashing and the oncoming train whistle and bell were sounding. The mere presence of the switch engine cannot be considered a proximate cause of the accident unless its presence in itself created a hazard. Such is not contended here. On the other hand, it is argued the stationary switch engine caused the lights to flash, thus indicating to deceased that she might cross the tracks in safety. We are not persuaded by this theory, because the flashing of the lights, the blowing of the whistle and the ringing of the bell, which was not contradicted, cannot be construed to mean that no train was at hand. See Stewart v. Norton, 9 N.J.Super. 222, 75 A.2d 900.

Therefore we conclude the trial court should have given a peremptory instruction in favor of defendants. See Louisville & N. R. Co. v. Hurst's Adm'r, 220 Ky. 402, 295 S.W. 458; Holder v. Illinois Cent. R. Co., 217 Ky. 759, 290 S.W. 698.

Wherefore, the judgment is affirmed.